[No. 24604-6-I.   Division One.   September 17, 1990.]

CHARLES OREAR, *Appellant,* v. INTERNATIONAL PAINT
COMPANY, ET AL, *Defendants,* SEAPORT CHEMICAL/
THREE M SUPPLY CO., INC., *Respondent.*

*Kristin Houser* and *Schroeter, Goldmark & Bender, P.S.; Mary Alice Theiler* and *Gibbs, Douglas, Theiler & Drachler,* for appellant.

*Jeffrey C. Wishko, John F. Magnuson,* and *LeSourd & Patten, P.S.,* for respondent.

WEBSTER, J.—Charles Orear appeals a summary judgment dismissal of his product liability claim against Seaport Chemical/Three M Supply Company. The sole issue is whether a product liability claim can accrue before the plaintiff knows or with reasonable diligence should know who manufactured or supplied the defective product.

## FACTS

Charles Orear was exposed to epoxy paints and solvents, which he claims were defective, while employed at Todd Pacific Shipyards Corporation between 1980 and 1985. He filed suit against several manufacturers and distributors, including 3M Company, also known as Minnesota Mining and Manufacturing, on July 31, 1986. Orear named 3M based on his memory of a product label. He remembered the label as being 3 to 4 inches across and having three M's, two side by side and one centered on top.

Todd Shipyards refused to identify the manufacturer or distributor of the allegedly defective products, except in response to formal discovery under federal administrative law. Orear and another employee had federal labor law claims pending against Todd when this action was filed. According to Orear's counsel, who also represented the other employee, there was no right to formal discovery until 1986, when one of the labor law claims was set for a hearing before an administrative law judge of the United States Department of Labor. Orear's counsel served interrogatories in relation to this claim on July 24, 1986, asking Todd Shipyards to identify the paint products used by it, including the names of the products' manufacturers and distributors. Before Todd Shipyards' answers were due, the labor law claim was removed from the hearing calendar and

remanded to a deputy commissioner. According to Orear's attorney, the effect of the remand was to suspend all discovery until February 1988, when the case was again referred to an administrative law judge for a hearing. Seaport does not dispute this. Todd Shipyards provided answers on July 20, 1988, identifying its suppliers; however, it refused to do so earlier.

Meanwhile, before this action was filed on July 31, 1986, counsel for Orear searched manufacturer indices and corporate listings. The only "3M company" listed was Minnesota Mining and Manufacturing, a Delaware corporation. The Industrial Finishing Buyer's Guide for August 1986 listed 3M as a manufacturer of epoxy resins. This led counsel to believe 3M was the company whose label Orear remembered. Accordingly, counsel named 3M as a defendant in the July 31, 1986, complaint.

In October and November 1986, 3M asked for specific information to identify the allegedly defective products. In December 1986, 3M said it was having trouble verifying that it manufactured the specified products. In March and September 1987, 3M said it was still checking on this. In March 1988, 3M informed counsel for Orear that there might be another company operating locally under the same name. An attorney for 3M said she would try to obtain more specific information.

Counsel for Orear telephoned the attorney on September 13, 1988, to find out the status of her investigation. Counsel learned that a local company, now called Seaport, previously operated under the 3M name. The national 3M paid the local one to change its name. Counsel agreed to dismiss the national 3M in exchange for an affidavit to this effect.

Seaport's vice–president verified that on September 23, 1983, it changed its name from Three M Supply Company to Seaport Chemicals, Inc./Three M Supply Company, Inc. Seaport registered its new name with the Secretary of State. However, it operated merely as Seaport Chemicals, Inc., and omitted the "Three M" designation from its product labels.

252

Orear amended his complaint to add Seaport as a defendant, with leave of court, on March 6, 1989. Seaport moved for summary judgment, asserting that Orear's suit was time barred under the 3–year statute of limitations of RCW 4.16.080[1] and 7.72.060,[2] because Orear had not met the requirements for relation back under CR 15(c).[3] Orear responded that CR 15(c) was irrelevant because the statute of limitations had not begun to run until he knew or should have known the identity of the defendant responsible for his injury. Since this occurred sometime in 1988, the action was timely on the date of the amended complaint adding Seaport as a defendant. The trial court granted Seaport's motion for summary judgment, resulting in this appeal. We reverse.

## DISCUSSION

Orear contends *Martin v. Patent Scaffolding*, 37 Wn. App. 37, 42–45, 678 P.2d 362 (1984) is directly on point. However, *Martin* is arguably distinguishable, as implied by the court in the following language:

---

[1]RCW 4.16.080 provides in pertinent part: "The following actions shall be commenced within three years:

". . . .

"(2) An action . . . for any . . . injury to the person or rights of another not hereinafter enumerated".

[2]RCW 7.72.060 provides in pertinent part: "[N]o claim under this chapter may be brought more than three years from the time the claimant discovered or in the exercise of due diligence should have discovered the harm and its cause." This provision governs product liability claims for harm caused after July 26, 1981. *See* RCW 4.22.920; *Sahlie v. Johns–Manville Sales Corp.*, 99 Wn.2d 550, 554, 663 P.2d 473 (1983).

[3]CR 15(c) provides that an amended pleading changing the party against whom a claim is asserted relates back to the date of the original pleading if the claim arises out of the same conduct, transaction, or occurrence, and if "within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him."

> Respondent argues that the identity of the particular seller is not an essential element of the cause of action. But it is essential that appellant knew or should have known that there was *a seller* in the business of selling products against whom he had a cause of action.

(Italics ours.) *Martin,* at 44. Orear acknowledges this distinction, *i.e.,* between knowledge that a manufacturer or seller exists and knowledge as to who actually manufactured or supplied the defective product.

However, Orear contends the distinction is resolved by *Reichelt v. Johns–Manville Corp.,* 42 Wn. App. 620, 625, 712 P.2d 881 (1986), *aff'd,* 107 Wn.2d 761, 771, 733 P.2d 530 (1987). In *Reichelt,* both this court and our Supreme Court implied that a product liability claim does not accrue until the plaintiff knows or with reasonable diligence should know the identity of the manufacturer or supplier of the defective product. Edward Reichelt knew the identities of 14 of 28 defendant manufacturers of asbestos in 1974, and he could have ascertained the identities of the other defendants in 1977, more than 3 years before he filed suit. Therefore, his action was time barred.

*Reichelt* did not necessarily decide the question presented in the instant case, as it was enough for the court to assume, without deciding, that knowledge of each particular defendant's identity was essential to the accrual of the plaintiff's cause of action against each defendant. Also, as Seaport emphasizes, the court did not consider the effect of CR 15(c). Nevertheless, we believe the analysis in *Reichelt* applies here.

Seaport places principal reliance on *Hill v. Withers,* 55 Wn.2d 462, 348 P.2d 218 (1960). However, as Orear notes, *Hill* is a prediscovery rule case; it is not a product liability case; and most importantly, the plaintiff in *Hill* knew or should have known the proper party to sue.

Our Supreme Court adopted the discovery rule for compelling reasons in *Ruth v. Dight,* 75 Wn.2d 660, 453 P.2d 631 (1969). That case involved a surgical sponge left in the

plaintiff's abdomen. In a later case, the discovery rule permitted an action by a person who knew at a very early age that she had been blinded by excessive oxygen at birth, but who did not learn until age 21 that the defendants administered more oxygen than was necessary to save her; *i.e.,* that the administration of oxygen was tortious. *See Ohler v. Tacoma Gen. Hosp.,* 92 Wn.2d 507, 598 P.2d 1358 (1979). Reversing the trial court's grant of summary judgment dismissal, the Supreme Court held that "[t]he outcome–determinative fact here is the timing of appellant's discovery of all the elements of her possible cause of action *against Tacoma General.*" (Italics ours.) *Ohler,* at 511. As to another respondent (the manufacturer of an incubator through which the oxygen was administered), the court applied the discovery rule and declared, "[o]ur review of the record leads us to believe that whether appellant discovered all the elements of her possible cause of action *against Air Shields* more than 3 years before she filed this lawsuit is a genuine issue of material fact." (Italics ours.) *Ohler,* at 514.

Later, the court explicitly formulated the discovery rule in product liability actions as being defendant specific:

Under *Ohler,* the cause of action in a products liability case accrues when the plaintiff discovers or ought to have discovered all the essential elements of his possible cause of action. In an action against the seller of a product based on the Restatement (Second) of Torts § 402A (1965) (adopted in this state in *Ulmer v. Ford Motor Co.,* 75 Wn.2d 522, 452 P.2d 729 (1969)) there are three such essential elements: first, that the plaintiff user or consumer suffers physical harm from a product which has a defective condition making it unreasonably dangerous; second, that *the defendant seller* is engaged in the business of selling such a product; and third, that the product is expected to and does reach the plaintiff without substantial change in the condition in which it is sold. Under *Ohler,* the cause of action does not accrue until the plaintiff discovers or ought to have discovered all three of these elements.

(Italics ours.) *Sahlie v. Johns–Manville Sales Corp.,* 99 Wn.2d 550, 552, 663 P.2d 473 (1983). The reference to "the defendant seller" in the above quote necessarily means the

particular defendant seller against whom the plaintiff's action is brought and who is asserting the statute of limitations as a defense.

Recently, the court considered the effect of RCW 7.72-.060(3) on the *Ohler* discovery rule. *See North Coast Air Servs., Ltd. v. Grumman Corp.,* 111 Wn.2d 315, 759 P.2d 405 (1988). The pertinent statutory language provided, as it does now, that a product liability claim accrues when "the claimant discovered or in the exercise of due diligence should have discovered the harm and its cause." RCW 7.72.060(3); *North Coast Air,* at 319. Given the inherent ambiguity in the word "cause", the court held it was "appropriate to apply a liberal construction consistent with the Legislature's declaration that its intent was to not unduly impair a claimant's right to recover." *North Coast Air,* at 326. Thus, the court rejected the defendant's proposed rule, which would have required the plaintiffs "to begin a suit before they either had or should have had any knowledge of a possible legal responsibility of this *defendant.*" (Italics ours.) *North Coast Air,* at 323. Although plaintiffs knew in 1974 that their harm resulted from an airplane crash, investigating authorities attributed the crash to pilot error. Plaintiffs did not learn until 1984 that the actual cause of the crash was a defective elevator linkage. *North Coast Air,* at 317–18. Whether plaintiffs in due diligence should have discovered the defective linkage earlier was an unresolved question of fact precluding summary judgment. *North Coast Air,* at 328.

Although no Washington court has explicitly decided whether knowledge or imputed knowledge of a particular defendant's identity is necessary for the plaintiff's cause of action against that defendant to accrue, we hold that such knowledge is necessary, absent countervailing statutory language. This holding finds support in a majority of jurisdictions which have recently faced the question whether the discovery rule encompasses the identity of the particular

party responsible for the plaintiff's injury.[4] *See, e.g., Spitler v. Dean,* 148 Wis. 2d 630, 436 N.W.2d 308 (1989); *Shortess v. Touro Infirmary,* 520 So. 2d 389, 392 (La. 1988); *Meyers v. Larreategui,* 31 Ohio App. 3d 161, 509 N.E.2d 971 (1986); *Foster v. Harris,* 633 S.W.2d 304 (Tenn. 1982); *Adams v. Oregon State Police,* 289 Or. 233, 611 P.2d 1153 (1980); *see also Mullinax v. McElhenney,* 817 F.2d 711, 716 (11th Cir. 1987) (federal civil rights action under 42 U.S.C. § 1983); *Royal Indem. Co. v. Petrozzino,* 598 F.2d 816 (3d Cir. 1979) (conversion action); *Autocephalous Greek–Orthodox Church v. Goldberg & Feldman Fine Arts, Inc.,* 717 F. Supp. 1374 (S.D. Ind. 1989) (replevin action), following *O'Keeffe v. Snyder,* 83 N.J. 478, 416 A.2d 862, 870 (1980) (same).

The rationale of these decisions is particularly compelling in latent–injury, products liability cases where the connection between the plaintiff's injury and the allegedly defective product is difficult to trace. *See Lawhon v. L.B.J. Institutional Supply, Inc.,* 159 Ariz. 179, 765 P.2d 1003 (Ct. App. 1989);[5] *Western Helicopters, Inc. v. Rogerson Aircraft Corp.,* 715 F. Supp. 1493 (D. Or. 1989); *Yustick v. Eli Lilly & Co.,* 573 F. Supp. 1558 (E.D. Mich. 1983); *see also Hickman v. Grover,* 358 S.E.2d 810 (W. Va. 1987) (reformulating discovery rule in products liability cases to encompass defendant's identity). *Accord, Allied Corp. v.*

---

[4]Although a minority of jurisdictions appear to follow a contrary rule, we do not find their reasoning persuasive in the absence of statutory language mandating it. *See Jolly v. Eli Lilly & Co.,* 44 Cal. 3d 1103, 1114, 751 P.2d 923, 245 Cal. Rptr. 658 (1988); *Smith v. Sinai Hosp.,* 152 Mich. App. 716, 394 N.W.2d 82, 86–87 (1986); *Staiano v. Johns Manville Corp.,* 304 Pa. Super. 280, 450 A.2d 681, 684–85 (1982); *Guebard v. Jabaay,* 21 Ill. Dec. 620, 65 Ill. App. 3d 255, 381 N.E.2d 1164, 1167 (1978).

[5]*Lawhon,* at 182, relies on two cases which our Supreme Court found persuasive in *White v. Johns–Manville Corp.,* 103 Wn.2d 344, 354, 693 P.2d 687, 49 A.L.R.4th 955 (1985): *Barrett v. United States,* 689 F.2d 324 (2d Cir. 1982), *cert. denied,* 462 U.S. 1131 (1983) and *Liuzzo v. United States,* 485 F. Supp. 1274 (E.D. Mich. 1980). *White,* at 354, also cites an Oregon appellate case, *Shaughnessy v. Spray,* 55 Or. App. 42, 637 P.2d 182 (1981), which further suggests our Supreme Court would follow the majority rule.

*Frola,* 730 F. Supp. 626, 631–32 (D.N.J. 1990) (action for tortious injury to real property based on hazardous waste disposal).

A person injured by a defective product simply cannot be said to have discovered the cause of injury in a legally enforceable sense until he or she discovers *who* manufactured or supplied the product or is otherwise responsible for the injury. *See Yustick,* 573 F. Supp. at 1562–63; Annot., *Products Liability: Necessity and Sufficiency of Identification of Defendant as Manufacturer or Seller of Product Alleged To Have Caused Injury,* 51 A.L.R.3d 1344, 1349 (1973). Thus, the justification for the discovery rule as applied to unknown injury applies with equal force to unknown defendants. *See Spitler,* 436 N.W.2d at 310; *Lawhon,* at 183 ("[t]he cause of action does not accrue until the plaintiff knows or should have known of both the *what* and *who* elements of causation").

We conclude that the statutes of limitations applicable to Orear's cause of action against Seaport did not begin to run until he knew or with reasonable diligence should have known that Seaport may have been a responsible party. On this record, whether Orear should have discovered Seaport's identity as a potentially responsible party prior to 1988 is an issue of fact that precludes summary judgment. *See North Coast Air,* 111 Wn.2d at 319, 328; *Ohler,* 92 Wn.2d at 511–12, 514. Given our decision, relation back under CR 15(c) is unnecessary. *See Lawhon,* at 183; *Western Helicopters,* 715 F. Supp. at 1495.

The order granting Seaport's motion for summary judgment is reversed and the cause is remanded for further proceedings.

GROSSE, A.C.J., and WINSOR, J., concur.

Review denied at 116 Wn.2d 1024 (1991).