## VINCENT IVES *v.* NMTC, INC., ET AL.

| Superior Court | Judicial District of Litchfield | File No. CV970073322S |
| --- | --- | --- |

Memorandum filed December 16, 1999

*Guendelsberger & Taylor*, for the plaintiff.

*Gordon, Muir & Foley*, for the named defendant.

*Cotter, Cotter & Sohon*, for the defendant Michael Bowe.

*Horton, Shields & Cormier*, for the defendant White Industrial Tool, Inc.

FRAZZINI, J. This case presents an issue of first impression in Connecticut; whether to toll the statute of limitations for actions brought against a manufacturer under the state's Product Liability Act, General Statutes § 52-572m et seq., until a plaintiff discovers the identity of the manufacturer. Courts in other states have repeatedly wrestled with this issue, but the present case appears to be the first time a Connecticut court has addressed it.

The plaintiff, Vincent Ives, owns a gas station and garage in Washington, Connecticut. He claims that a socket wrench he purchased from the defendant Michael Bowe broke and injured him on March 30, 1994. On February 26, 1997, the plaintiff filed a complaint against Bowe and the named defendant, NMTC, Inc. (NMTC), which he claimed had either manufactured the socket wrench or distributed it to Bowe. After NMTC brought a third party complaint seeking indemnification from the manufacturer of the socket wrench, White Industrial Tool, Inc. (White), the plaintiff amended his complaint on March 25, 1999, to add White as an original defendant. The fourth count of the amended complaint, brought against White under the Product Liability Act, alleges that the socket wrench was defective and unreasonably dangerous when sold. The fifth count, seeking

damages against White under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., alleges that the socket wrench was sold as a new tool when it was actually used. White has now moved for summary judgment claiming that the plaintiff's claims against it are barred by the statute of limitations. For the reasons stated below, the court grants the motion for summary judgment.

A court will grant summary judgment if, viewing the evidence in the light most favorable to the nonmoving party; *Elliot* v. *Waterbury*, 245 Conn. App. 385, 391, 715 A.2d 27 (1998); there is no genuine issue of material fact and the moving party would be entitled to a directed verdict on those facts. *Batick* v. *Seymour*, 186 Conn. 632, 647, 443 A.2d 471 (1982). A material fact is one that will make a difference in the result of the case. *Hammer* v. *Lumberman's Mutual Casualty Co.*, 214 Conn. 573, 578, 573 A.2d 699 (1990). The moving party has the burden of demonstrating the absence of any genuine issue of material fact. *Gupta* v. *New Britain General Hospital*, 239 Conn. 574, 582, 687 A.2d 111 (1996). A party opposing summary judgment, however, "must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Citation omitted; internal quotation marks omitted.) *Water & Way Properties* v. *Colt's Mfg. Co.*, 230 Conn. 660, 664–65, 646 A.2d 143 (1994). A court should grant summary judgment "if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. "Summary judgment may be granted

where the claim is barred by the statute of limitations." *Altfeter* v. *Naugatuck*, 53 Conn. App. 791, 801, 732 A.2d 207 (1999).

In the present case, White claims that the plaintiff's claims against it are barred by the statute of limitations because the plaintiff brought the case more than three years after being injured. The relevant statute of limitations for the product liability claim is General Statutes § 52-577a (a), which provides that: "No product liability claim as defined in section 52-572m shall be brought but within three years from the date when the injury, death or property damage is first sustained or discovered or in the exercise of reasonable care should have been discovered except that, subject to subsections (c), (d) and (e), no such action may be brought against any party nor may any party be impleaded pursuant to subsection (b) later than ten years from the date that the party last parted with possession or control of the product." The statute of limitations for the CUTPA claim is General Statutes § 42-110g (f), which provides that: "An action under this section may not be brought more than three years after the occurrence of a violation of this chapter."

Deciding this issue is a matter of statutory construction. "As with any issue of statutory interpretation, our initial guide is the language of the operative statutory provisions." *In re Baby Z.*, 247 Conn. 474, 498, 724 A.2d 1035 (1999); *Federal Deposit Ins. Corp.* v. *Peabody, N.E., Inc.*, 239 Conn. 93, 102, 680 A.2d 1321 (1996). As our Supreme Court has instructed, "our fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general

subject matter." (Internal quotation marks omitted.) *Castagno* v. *Wholean*, 239 Conn. 336, 339, 684 A.2d 1181 (1996). "It is axiomatic, however, that when the statutory language is clear and unambiguous, construction of the statute by reference to its history and purpose is unnecessary." *National Loan Investors Ltd. Partnership* v. *Heritage Square Associates*, 54 Conn. App. 67, 72, 733 A.2d 876 (1999).

There is no dispute here that the plaintiff brought this action more than three years after sustaining and discovering his injuries. The plaintiff claims in his objection to White's motion for summary judgment that since he "was not capable of suing White prior to ascertaining who [it was] and what [its] connection to the subject product was," there are "genuine issues of material fact as to when the plaintiff's actionable harm against the defendant arose."

I

## THE CUTPA CLAIM

Our higher courts have already addressed the statute of limitations claim on the CUTPA count. In *Fichera* v. *Mine Hill Corp.*, 207 Conn. 204, 212, 541 A.2d 472 (1988), the court held that the statutory language of § 42-110a (f) "precludes any construction thereof delaying the start of the limitation period until the cause of action has accrued or the injury has occurred." The period of limitations for claims brought under CUTPA begins on the date that the unfair practice occurs. Even claims of fraudulent concealment do not toll the CUTPA statute. "Since CUTPA violations are defined in General Statutes § 42-110b to include 'deceptive acts or practices in the conduct of any trade or commerce,' it is evident that the legislature intended that the perpetrators of such fraudulent practices, as well as other CUTPA violators, should be permitted to avail themselves of the statute of limitations defense provided by § 42-110g (f)." Id., 216.

## II

## THE PRODUCT LIABILITY CLAIM

"In Connecticut, a [product liability] cause of action accrues when a plaintiff suffers actionable harm. *Catz* v. *Rubenstein*, 201 Conn. 39, 43, 513 A.2d 98 (1986). Actionable harm occurs when the plaintiff discovers or should discover, through the exercise of reasonable care, that he or she has been injured and that the defendant's conduct caused such injury." *Champagne* v. *Raybestos-Manhattan, Inc.*, 212 Conn. 509, 521, 562 A.2d 1100 (1989). Specifically, actionable harm occurs "when the plaintiff discovers, or in the exercise of reasonable care should have discovered, the essential elements of a cause of action." *Lambert* v. *Stovell*, 205 Conn. 1, 6, 529 A.2d 710 (1987). The plaintiff maintains that "[t]he key inquiry must be when the plaintiff knew, or should have known, of the facts which constituted an actionable harm."

Applying the above criteria, the plaintiff argues that he did not suffer "actionable harm" at the hands of White until he discovered "that [White's] conduct caused his injury." The plaintiff argues that the date on which he discovered the essential elements of the cause of action, and, therefore, the proper date from which to measure the three year statute of limitations would be the date he first learned that White was the manufacturer of the socket wrench. The plaintiff thus relies on the so-called "discovery rule" to avoid the statute of limitations. As applied by some courts, that rule states that the limitations period starts to run not from the date the tortious act occurred (here, 1994) but from the date that a plaintiff discovers his injury and, in some jurisdictions, the identity of the party causing the injury (here, by manufacturing the socket wrench).

Although Connecticut does, by legislation, toll the product liability statute of limitations when a party fraudulently conceals its conduct; General Statutes § 52-595; no reported Connecticut cases have considered the application of the discovery rule to discovery of the defendant's identity when there is no claim of fraudulent concealment; nor is the court aware of any unreported decisions from the Superior Court on this issue.

The two prongs of the "actionable harm" test used by Connecticut courts to determine when the statute of limitations begins to run—when the plaintiff discovers (1) that he has been injured and (2) that the defendant's conduct caused this injury—are similar to that employed by many other jurisdictions, including some that do and some that do not toll the statute of limitations while the identity of the defendant is unknown. See *McDaniel* v. *LaSalle Ambulance Service, Inc.*, 108 Ill. App. 3d 1042, 1045, 440 N.E.2d 158 (1982) ("[a] cause of action accrues when the plaintiff knows or reasonably should know of an injury and also knows or reasonably should know that the injury was caused by the wrongful acts of another"; negligence suit against physician dismissed on statute of limitations grounds since there was no fraudulent concealment); *Borello* v. *U.S. Oil Co.*, 130 Wis. 2d 397, 399 n.1, 388 N.W.2d 140 (1986) ("a period of limitation within which an action may be commenced is computed from the time that the cause of action accrues" [internal quotation marks omitted]); *Borello* v. *U.S. Oil Co.*, supra, 406–407 ("a cause of action does not accrue until the nature of the injury and the cause—or at least a relationship between the event and injury—is or ought to have been known to the claimant"; statute of limitations tolled until homeowner discovered identity of furnace manufacturer).

As the court explained in *Catz*, it is no coincidence that the legislature adopted a test used by other states

for the running of the statute of limitations and that our courts have interpreted our statute in accord with the decisions of other states. The *Catz* court noted that the legislature adopted discovery language when it enacted § 52-584: "The formulation of § 52-584[1] which used the term 'injury' was adopted by the legislature in 1957. The language in the statute in effect prior to that time provided that an action could be brought only within one year 'from the date of the act or omission complained of.' . . . The testimony in 1957 before the General Law Committee of the legislature, which considered the predecessor to our present § 52-584, indicates that the use of the term 'injury' was a conscious reaction to, and an attempt to alleviate the draconian effect of two cases . . . . In those cases the United States Second Circuit Court of Appeals and this court concluded that the language 'act or omission complained of' in [General Statutes (Rev. to 1949)] § 8324 required a holding that the statute of limitations began running on the date of the defendant's negligence and that a plaintiff's cause of action could be barred before the plaintiff suffered any harm and therefore before a cause of action had accrued. The use by the legislature of the word 'injury' rather than 'act or omission' in the initial part of § 52-584 was obviously a deliberate choice, as the words 'act or omission' were used in the second portion of the statute pertaining to the three year period of limitation." (Citations omitted.) *Catz* v. *Rubenstein,* supra, 201 Conn. 46–47.

Because of that history, the *Catz* court then considered the analysis of other jurisdictions in adopting the

---

[1] General Statutes § 52-584, the negligence statute of limitations, uses virtually the same discovery of injury language ("from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered") as General Statutes § 52-577a, the product liability statute ("from the date when the injury, death or property damage is first sustained or discovered or in the exercise of reasonable care should have been discovered"). The court will thus refer interchangeably to the two statutes of limitations.

actionable harm test.[2] As noted previously, however, the various jurisdictions to which the *Catz* court looked do not agree on whether to apply the discovery rule to ascertaining the identity of the defendant. The courts of other states seem to take three approaches to this issue.

According to the Washington,[3] Wisconsin and New Hampshire Supreme Courts, a majority of courts considering the issue have held that " '[a] cause of action

---

[2] "Other jurisdictions have also held that a plaintiff must have discovered or in the exercise of reasonable care should have discovered the essential elements of a possible cause of action before the statute of limitations commences to run. 'A cause of action will not accrue until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's *wrongful* conduct.' . . . *Brown* v. *Mary Hitchcock Memorial Hospital*, 117 N.H. 739, 743, 378 A.2d 1138 (1977). 'We hold that the statute of limitations begins to run when the claimant has knowledge of facts which would put a reasonable person on notice of the nature and extent of an injury and that the injury was caused by the wrongful conduct of another. The overwhelming majority of state appellate courts which have addressed the issue here have adopted the "legal injury" construction of the word here "injury" used in statutes of limitation governing medical malpractice actions. The focus is on the plaintiff's knowledge of facts, rather than on discovery of applicable legal theories. Decisions by the appellate courts of California, Hawaii, Iowa, Nevada, New Hampshire, New Jersey, North Dakota, Ohio, Oregon, Utah and West Virginia support this interpretation of the word "injury." ' *Mastro* v. *Brodie*, 682 P.2d 1162, 1168 (Colo. 1984); see *Graham* v. *Hansen*, 128 Cal. App. 3d 965, 180 Cal. Rptr. 604 (1982); *Yamaguchi* v. *Queens Medical Center*, 648 P.2d 689 (Hawaii 1982); *Baines* v. *Blenderman*, 223 N.W.2d 199 (Iowa 1974); *Massey* v. *Litton*, 99 Nev. 723, 669 P.2d 248 (1983); *Brown* v. *Mary Hitchcock Memorial Hospital*, supra [739]; *Silverman* v. *Lathrop*, 168 N.J. Super. 333, 403 A.2d 18 (1979); *Iverson* v. *Lancaster*, 158 N.W.2d 507 (N.D. 1968); *Schiele* v. *Hobart Corporation*, 284 Or. 483, 587 P.2d 1010 (1978); *Berry* v. *Branner*, 245 Or. 307, 421 P.2d 996 (1966); *Foil* v. *Ballinger*, 601 P.2d 144 (Utah 1979); *Renner* v. *Asli*, 280 S.E.2d 240 (W. Va. 1981); see also *Lopez* v. *Swyer*, 62 N.J. 267, 300 A.2d 563 (1973); *Oliver* v. *Kaiser Community Health Foundation*, 5 Ohio St. 3d 111, 449 N.E.2d 438 (1983); *Brosse* v. *Cumming*, 20 Ohio App. 3d 260, 485 N.E.2d 803 (1984); *Wilkinson* v. *Harrington*, 104 R.I. 224, 243 A.2d 745 (1968); *Ohler* v. *Tacoma General Hospital*, 92 Wash. 2d 507, 598 P.2d 1358 (1979); *Wood* v. *Gibbons*, 38 Wash. App. 343, 685 P.2d 619 (1984)." (Emphasis in original.) *Catz* v. *Rubenstein*, supra, 201 Conn. 47–48.

[3] See *Orear* v. *International Paint Co.*, 59 Wash. App. 249, 255–56, 796 P.2d 759 (1990): "[W]e hold that such knowledge [of the identity of the

will not accrue under the discovery rule until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's conduct.' " *Borrello* v. *U.S. Oil Co.*, supra, 130 Wis. 2d 410, quoting *Raymond* v. *Eli Lilly & Co.*, 117 N.H. 164, 170–71, 371 A.2d 170 (1977).[4]

A significant number of courts, however (and this court has been unable to verify whether theirs is actually a "minority" view), apply the discovery rule to delay the accrual date of a cause of action while a plaintiff is unaware of its injury and its negligent cause, but not until a plaintiff learns the identity of the defendant. See, e.g., *Jolly* v. *Eli Lilly & Co.*, 44 Cal. 3d 1103, 751 P.2d 923, 245 Cal. Rptr. 658 (1988) (plaintiff's inability to identify particular manufacturer of diethylstilbestrol [DES] fungible drug that caused her injury did not toll statute of limitations).[5]

A third approach, allied to the second, rejects any delay in accrual of the cause of action, but allows the plaintiffs to file an anonymous "John or Jane Doe" complaint naming a fictitious party during the period

defendant] is necessary, absent countervailing statutory language. This holding finds support in a majority of jurisdictions which have recently faced the question whether the discovery rule encompasses the identity of the particular party responsible for the plaintiff's injury."

[4] See, e.g., *Lawhon* v. *L.B.J. Institutional Supply*, 159 Ariz. 179, 765 P.2d 1003 (1989); *Diamond* v. *Davis*, 680 A.2d 364 (D.C. App. 1996); *Shortess* v. *Touro Infirmary*, 520 So. 2d 389 (La. 1988); *Orear* v. *International Paint Co.*, 59 Wash. App. 249, 796 P.2d 759 (1990); *Cart* v. *Marcum*, 188 W. Va. 241, 423 S.E.2d 644 (1992).

[5] See also *International Brotherhood of Carpenters & Joiners of America, Local 1765* v. *United Assn. of Journeymen & Apprentices of the Plumbing & Pipefitting Industry, Local 803*, 341 So. 2d 1005 (Fla. App. 1977); *McDaniel* v. *LaSalle Ambulance Service, Inc.*, supra, 108 Ill. App. 3d 1042; *Poffenbarger* v. *Kaplan*, 224 Mich. App. 1, 568 N.W.2d 131 (1997); *Frazee* v. *Partney*, 314 S.W.2d 915 (Mo. 1958).

of limitations and then subjects the plaintiffs to a standard of reasonableness in their efforts to learn the identity of the actual tortfeasor.[6] In *Ayala* v. *Smith*, 236 Conn. 89, 90, 671 A.2d 345 (1996), the Supreme Court agreed whether to consider "under our rules of practice, a plaintiff may maintain an action against a defendant whose identity is unknown to the plaintiff and is therefore referred to as 'John Doe.' " After the plaintiff in *Ayala* conceded at oral argument that it was unlikely ever to be able to identify the unknown defendant, however, the court dismissed the case as moot. Id., 96. In the present case, however, the plaintiff did not seek to bring an action against a "John Doe" within the period of the statute of limitations.[7]

The various reasons cited by courts for applying the discovery rule to the identity of the defendant do not seem applicable to this court in the context of the present case. Some courts appear to view it as a matter of simple fairness that the plaintiffs not lose their right to recover from a defendant when the plaintiffs have in good faith sought to ascertain that party's identity; see, e.g., *French* v. *Audley, Inc.*, 123 N.H. 476, 480, 464 A.2d 279 (1983); "a plaintiff should not be prejudiced by a delay occasioned by the fact that he is unaware of his injury or that he does not know his adversary. Our decision today is consistent with a strong policy in favor of adjudication of claims on their merits." Id.

---

[6] See, e.g., *Bernson* v. *Browning-Ferris Industries*, 7 Cal. 4th 926, 932, 873 P.2d 613, 30 Cal. Rptr. 2d 440 (1994) (en banc) ("once the plaintiff is aware of the injury, the applicable limitations period [often effectively extended by the filing of a Doe complaint] normally affords sufficient opportunity to discover the identity of all the wrongdoers"); *Russell* v. *Attco, Inc.*, 82 Haw. 461, 923 P.2d 403 (1996); *Apgar* v. *Lederle Laboratories*, 123 N.J. 450, 588 A.2d 380 (1991); *Sherbert* v. *SCE, Inc.*, 678 So. 2d 1115 (Ala. App. 1996).

[7] The approach that the plaintiffs attempted in *Ayala* is the one that this court believes best reconciles the competing interests of plaintiffs and defendants. That issue, however, is not before this court.

The Washington Court of Appeals held that it is particularly appropriate to apply the discovery rule to the identity of the defendant in product liability cases: "A person injured by a defective product simply cannot be said to have discovered the cause of injury in a legally enforceable sense until he or she discovers who manufactured or supplied the product or is otherwise responsible for the injury." *Orear* v. *International Paint Co.*, 59 Wash. App. 249, 257, 796 P.2d 759 (1990).

Neither rationale seems applicable to the present case, however. There does not appear to be any unfairness to the defendant, who will still have his claim heard under a strict liability statute against the original seller and distributor, and any resources of the manufacturer, White, will be available to the plaintiff through the indemnification complaint. This is not a situation where a plaintiff was remediless until he knew who manufactured the product that injured him. The injuries that the plaintiff sustained were sufficient to put him on notice that his rights had been violated. Within the period of the statute of limitations he was able to identify and sue both the original seller and distributor.

The two parts of the "actionable harm" test are the plaintiff's discovery "that he has been injured" and "that the defendant's conduct caused that injury." As the conflicting cases in other jurisdictions construing similar terminology show, this language does not compel a decision either way as to whether to extend the discovery to include not just the injury but also the party causing the injury. The statutory language that this test explicates, however, refers to a plaintiff's discovery of "the injury, death or property damage." General Statutes § 52-584. That language is clear and the court finds no basis in law or policy to adopt a contrary rule here expanding its scope.[8] The plaintiff filed this action

[8] Our Supreme Court's decision in *Fichera* v. *Mine Hill Corp.*, supra, 207 Conn. 212, confirms that this court should resolve the statute of limitations claim on the product liability count by hewing closely to statutory language.

against White more than three years after sustaining and discovering his injuries, past the period of limitations for both causes of action. Accordingly, the motion for summary judgment of White is granted as to both the fourth and fifth counts.

Acknowledging while rejecting contrary judicial interpretations of similar statutes in other states, the court in *Fichera* closely adhered to the statutory language in interpreting the CUTPA statute of limitations: "Unlike the statutes of limitation of some other states applicable to unfair trade practices legislation analogous to our CUTPA, which expressly allow a certain period following the discovery of the deceptive practice for commencing suit; e.g., N.C. Gen. Stat. § 1-52 (9) ('the cause of action [for fraud or mistake] shall not be deemed to have accrued until the discovery by the aggrieved party of the facts . . . .')—applicable to unfair trade practice limitation (N.C. Gen. Stat. § 75-16.2) of four years from accrual of cause of action; *Jennings* v. *Lindsey*, 69 N.C. App. 710, 318 S.E.2d 318 (1984); Tex. Business and Commerce Code Annot. § 17.565 (Vernon) ('within two years after the date on which the . . . deceptive act or practice occurred or within two years after the consumer discovered or . . . should have discovered the occurrence . . . '); [General Statutes] § 42-110g (f) provides only that an action must be brought within three years 'after the occurrence of a violation of this chapter.' In construing our general tort statute of limitations, General Statutes § 52-577, which allows an action to be brought within three years 'from the date of the act or omission complained of,' we have concluded that the history of that legislative choice of language precludes any construction thereof delaying the start of the limitation period until the cause of action has accrued or the injury has occurred. *Prokolkin* v. *General Motors Corporation*, [170 Conn. 289, 294–97, 365 A.2d 1180 (1976)]. We have reached a similar conclusion in respect to the use of 'act or omission complained of' in our personal injury statute of limitations, General Statutes § 52-584, prior to its amendment in 1969 to provide an alternative date for commencement of the limitation period, 'two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered.' Public Acts 1969, No. 401, § 2. We have held, prior to the amendment, that even where the wrongful act could not reasonably have been discovered until after the statute had run, any action seeking damages for such an 'act or omission' was barred. *Kennedy* v. *Johns-Manville Sales Corporation*, 135 Conn. 176, 179–80, 62 A.2d 771 (1948).

   "We are unable to perceive any significant distinction applicable to this case between the 'act or omission' reference, denoting the start of the limitation period in §§ 52-577 and 52-584, and the 'occurrence of a violation' phrase in § 42-110g (f), setting the time when the three year period begins for bringing an action alleging a CUTPA violation. Neither the trial court nor the plaintiffs have suggested that this difference in statutory text is of any consequence under the circumstances of this case." *Fichera* v. *Mine Hill Corp.*, supra, 207 Conn. 212–13.