[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE #108
 FACTS
The plaintiff, S.A. Candelora, Enterprises, doing business as Taconic Wire Corporation, filed a five count revised complaint against the defendants Roger Wild, David Verlen, Warren Novick, Charles Eisner, Wire Investors, Inc., Offshore Metals America, Inc. and Pilgrim Wire Company, Inc. on May 4, 2001. Count one of the revised complaint, brought against the individual defendants, Wild, Verlen, Novick and Eisnor, alleges breach of contract in that the defendants jointly and severally engaged in continuous breaches of a covenant not to compete; count two, against CT Page 1370 Wild, Offshore Metals America, Inc., Wire Investors, Inc., Pilgrim Wire Company, Inc., and Continental Brass Company, Inc., alleges civil conspiracy in that the defendants actively conspired for the purpose of damaging and/or destroying the plaintiff's business; count three, against Wild, Offshore Metals America; Inc., Wire Investors, Inc., Pilgrim Wire Company, Inc., and Continental Brass Company, Inc., alleges unfair methods of competition and unfair and deceptive practices in violation of General Statutes Section 42-110b, the Connecticut Unfair Trade Practices Act (CUTPA); count four, against Wild, Offshore Metals America, Inc., Wire Investors, Inc., Pilgrim Wire Company, Inc., and Continental Brass Company, Inc., alleges tortious interference with the plaintiff's business relations in that they unlawfully and intentionally interfered with the plaintiff's business relations; and count five, against Wild, Wire Investors, Inc., Offshore Metals America, Inc., Continental Brass Company, Inc., and Pilgrim Wire Company, Inc., alleges "prima facie tort" in that the defendants had the intent to cause injury to the plaintiff. The defendant(s) move to strike counts two through five of the plaintiff's revised complaint as well as the second and third prayers for relief, pursuant to Practice Book § 10-39.
The plaintiff alleges the following facts in all counts of the revised complaint. This action arises out of damages and injuries related to a breach of a covenant not to compete. The plaintiff is a Connecticut corporation engaged primarily in the production of hard drawn ferrous metal wire, with a principal place of business in Branford, Connecticut. (Revised Complaint, ¶ 1.) On or about February 15, 1991, the plaintiff entered into a contract with the defendants Wild, Verlen, Novick and Eisner for the purchase of the assets of Taconic Wire Corporation, whose officers and shareholders at the time were the defendants Wild, Verlen, Novick and Eisner. (Revised Complaint, ¶ 15.) of essence in the contract was a non compete clause, which stated, in part, that for a period of five years after the closing date, the seller and shareholders would not directly or indirectly engage in any activity involved in the manufacture, use or consumption of wire for various detailed uses in any state where seller sold products, other than to benefit the buyer. (Revised Complaint, ¶ 16.) The sale of the assets of Taconic Wire Corporation closed on or about March 14, 1991. (Revised Complaint, ¶ 18.) The plaintiff alleges that the defendants, collectively and/or jointly and severally, engaged in a pattern of breaches of this contract commencing as early as November 23, 1994, and continuing throughout the pendency of the covenant not to compete, which expired on or about March 14, 1996. (Revised Complaint, ¶ 35.) As to all counts, the plaintiff is claiming money damages. As to the first count (breach of contract), the plaintiff is claiming liquidated damages in the amount of two million dollars, attorney's fees and costs of litigation. As to the third count (CUTPA), the plaintiff is claiming punitive damages and attorney's fees. CT Page 1371 As to the fifth count, the plaintiff is claiming actual damages.
The defendants filed a motion to strike on May 21, 2001. The plaintiff filed a memorandum in opposition to the defendants' motion to strike on July 3, 2001.
 DISCUSSION
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaints . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.)Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269, 270,709 A.2d 558 (1998). "A motion to strike admits all facts well pleaded."Parsons v. United Technologies Corp., 243 Conn. 66, 68, 700 A.2d 655
(1997). "The court must construe the facts in the complaint most favorably to the plaintiff." (Internal quotation marks omitted.) Faulknerv. United Technologies Corp., 240 Conn. 576, 580, 693 A.2d 293 (1997). "[I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Moreover . . . [w]hat is necessarily implied [in an allegation] need not be expressly alleged." (Citation omitted; internal quotation marks omitted.) Lombard v. EdwardJ. Peters, Jr., P.C., 252 Conn. 623, 626, 749 A.2d 630 (2000).
Wild moves to strike counts two, four and five of the plaintiff's revised complaint on the ground that they are barred by the economic loss doctrine. The defendants move to strike count three and its corresponding prayer for relief on the ground that it is time barred and fails to state a cause of action; and the second prayer for relief on the ground that the plaintiff has failed to allege facts that would support an award of liquidated damages and on the ground that the plaintiff has failed to plead a basis for recovery of attorney's fees and costs.
I. Whether Counts Two (Civil Conspiracy), Four (Tortious Interference With Business Relations) and Five (Prima Facia Tort) Should Be Stricken As To Wild On the Ground That They Are Barred By The Economic Loss Doctrine.
Wild argues that counts two, four and five should be stricken on the ground that they are barred by the economic loss doctrine. In his memorandum of law, he cites Scap Motors, Inc. v. Pevco SystemsInternational, Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 348461 (August 12, 1999, Melville, J.) (25 Conn.L.Rptr. 283, 284), for the proposition that "`the economic loss doctrine is a judicially created doctrine which bars recovery in tort where the relationship between the parties is contractual and the only losses alleged are economic.'" Wild argues that the rationale for the CT Page 1372 economic loss doctrine appears in Princess Cruises, Inc. v. GeneralElectric Co., 950 F. Sup. 151, 156 (E.D.Va. 1996), rev'd 143 F.3d 828
(1998) (Princess), where the court reasoned that "`to permit a party to a broken contract to proceed in tort where only economic losses are alleged would eviscerate the most cherished virtue of contract law, the power of the parties to allocate the risks of their own transactions.'" Wild also cites Flagg Energy Development Corp. v. General Motors Corp.,244 Conn. 126, 153-154, 709 A.2d 1075 (1998) (Flagg), stating that inFlagg, the Connecticut Supreme Court held that the rationale of Princess
was particularly applicable in the case before it in which "the plaintiff's tort claims depended upon allegations of fact identical to those asserted in their contract claims."
Wild suggests that based on Flagg, the economic loss doctrine has been adopted in Connecticut as a bar to recovery in tort where the only losses claimed are economic and the relationship between the parties is contractual. Wild argues that an examination of the claims against the defendants in counts two, four and five of the plaintiff's revised complaint reveals that they are "no more than a recasting of the breach of contract claim contained in Count One." Accordingly, Wild argues that because he and the plaintiff were commercial parties to a contract, and because the plaintiff's tort claims are in fact identical to his breach of contract claim, the plaintiff should not be permitted to "escape the confines of the contractual remedy for which it bargained."
In opposition, the plaintiff argues that Connecticut courts do not recognize the economic loss doctrine under the circumstances of this case; therefore, counts two through five should not be stricken.
 A
A discussion of the applicability of the economic loss doctrine in Connecticut begins with Flagg. In Flagg, the plaintiff corporation, which had purchased engines manufactured by the defendant, sought damages for, inter alia, breach of implied and express warranties. The complaint also included a count for breach of contract, and two counts charging the defendant with misrepresentation and breach of CUTPA. The court agreed "with the holdings of cases in other jurisdictions that commercial losses arising out of the defective performance of contracts for the sale of goods cannot combined with negligent misrepresentation." Flagg EnergyDevelopment Corp. v. General Motors, supra, 244 Conn. 153. It concluded that "[t]hese authorities are particularly persuasive in the circumstances of this case, in which the misrepresentation and CUTPA claims depend upon allegations of fact that are identical to those asserted in [the plaintiff's] claims." Id., 154. CT Page 1373
Wild suggests that Flagg has since stood for the proposition that the economic loss doctrine has been adopted in Connecticut. "[W]hatever the viability of the economic loss doctrine in Connecticut, the Connecticut Supreme Court has not, in at least some cases, barred claims for intentional torts or for negligent misrepresentation despite the fact purely economic losses are claimed." Reynolds, Pearson Co. v.Miglietta, Superior Court, judicial district of Hartford at Hartford, Docket No. 801247 (March 27, 2001, Berger, J.) (29 Conn.L.Rptr. 481, 485) (Reynolds). The court's reading of Flagg in Reynolds indicates thatFlagg does not stand for the broad proposition that the economic loss doctrine has been conclusively adopted in Connecticut as precluding all tort claims where the relationship between the parties is contractual and recovery is economic. Id., 484. Rather, in Reynolds, the court noted thatFlagg "may fairly be read as holding that where a plaintiff claims commercial losses suffered as a result of defective performance of a contract for the sale of goods, such losses are governed by the UCC, which in turn preserves common law actions for fraud and misrepresentation only as long as such actions are consistent with the particular provisions of the UCC." Id.
In Reynolds, the court goes on to point out that even if Flagg stands for the general adoption of the economic loss doctrine in Connecticut, "the Connecticut Supreme Court has indicated that where the tort alleged is an intentional tort, the doctrine would not apply to bar the cause of action." Id. Specifically, the court in Reynolds cites Connecticut MutualLife Insurance Co. v. New York New Haven R. Co., 25 Conn. 265, 276,65 App.Div. 571
(1856) (Connecticut Mutual), where a life insurance company sought damages from a railroad company, with whom it was not in privity, after an insured was killed while riding the railroad. The court found that the railroad was not liable to the insurance company, but it went on to state that "[h]ad the life of [the insured] been taken with intent to injure the plaintiffs through their contract liability, a different question would arise, inasmuch as every man owes a duty to every other not intentionally to injure him." Id.
The court in Reynolds further noted that the Connecticut Supreme Court expressly rejected the economic loss doctrine as a bar to a claim for negligent misrepresentation in Williams Ford, Inc. v. The HartfordCourant Co., 232 Conn. 559, 579, 657 A.2d 212 (1995) (Williams). "In that case, the defendant argued that the tort of negligent misrepresentation did not apply to the facts of the case on the ground that `where the controversy concerns purely economic losses allegedly caused by statements made during the course of a contractual relationship between businesses, it is contract law, rather than tort law, that should apply.'" Reynolds, Pearson Co. v. Miglietta, supra, 29 Conn.L.Rptr 484. The court in Williams, however, rejected the defendant's argument, CT Page 1374 concluding that "[i]f the plaintiff's complaint otherwise contains the necessary elements of negligent misrepresentation, it survives a motion to strike. . . . [A] remedy on the contract is independent of a remedy for negligent misrepresentation."[1] (Emphasis added; internal quotation marks omitted.) Williams Ford, Inc. v. The Hartford CourantCo., supra, 232 Conn. 579.
"Other jurisdictions that recognize the economic loss doctrine have found a number of exceptions" to the doctrine. Worldwide PreservationServices v. The IVth Shea, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 167154 (February 1, 2001,Tierney, J.) (29 Conn.L.Rptr. 1, 4). Among these exceptions are where the defendant's actions are independent of the defendant's breach of contract. Id. 5, citing Bradley Factor, Inc. v. United States,86 F. Sup.2d 1140, 1146 (M.D. Fla. 2000) (Bradley). In Bradley, the court noted that the economic loss rule[2] "does not apply to causes of action based upon negligent or intentional torts considered independent of the contractual breach even though a breach of contract action exists." Id., 1144.
In the present case, the plaintiff is alleging one count of civil conspiracy, one count of tortious interference with business relations, and one count of prima facie tort. "The requisites of a civil action for conspiracy are: (1) a combination between two or more persons, (2) to do a criminal or unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff." Williams v. Maislen, 116 Conn. 433, 437, 165 A. 455
(1933).
"The essential elements of a claim [for tortious interference with business relations] include . . . the existence of a contractual or beneficial relationship and that the defendant(s), knowing of that relationship, intentionally sought to interfere with it; and, as a result, the plaintiff claimed to have suffered actual loss." (Internal quotation marks omitted.) Solomon v. Aberman, 196 Conn. 359, 364,493 A.2d 193 (1985). "[F]or a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously. . . ." Daley v. Aetna Life Casualty Co.,249 Conn. 766, 805, 734 A.2d 112 (1999).
An essential element of a cause of action for prima facie tort requires that "there must be an intent to injure [the] plaintiff, at least to the extent of infliction of wrongful harm upon [the] plaintiff without just CT Page 1375 cause or excuse." (Emphasis in original.) Waters v. Autori, 236 Conn. 820,841 n. 7, 676 A.2d 357 (1996).
In count two of his revised complaint, the plaintiff alleges that the defendants "actively conspired and acted in concert . . . for the purpose of damaging and/or destroying plaintiff's business." In count four, the plaintiff alleges that the defendants "unlawfully and intentionally interfered with Plaintiff's ongoing business relationship with Stanley-Bostich, with the purpose of causing Stanley-Bostich to cease doing business with Plaintiff, thereby causing Plaintiff finacial loss." In count five, the plaintiff alleges that the defendants "each acted . . . with an intent to cause injury to the Plaintiff."
In counts two, four and five of his revised complaint, the plaintiff alleges intentional torts which would survive Wild's motion to strike because, as allegations of intentional torts, they could conceivably be "independent of the contractual breach." Bradley Factor, Inc. v. UnitedStates, supra, 86 F. Sup.2d 1146.
 B
Wild cites Amity Regional School District #5 v. Atlas ConstructionCo., judicial district of Waterbury, Superior Court, Docket No. 153388, (July 26, 2000, McWeeny, J.) (27 Conn.L.Rptr. 605, 606) for the proposition that "[t]he thrust of the common law economic loss rule is that in the absence of privity of contract between the plaintiff and the defendant, the plaintiff may not recover in tort for a purely economic loss." The presumption that the economic loss doctrine is applied where there is a lack of privity between parties derives from ConnecticutMutual Life Insurance Co. v. New York New Haven Railroad Co., supra,25 Conn. 276: "We decide, that in the absence of any privity of contract between the plaintiffs and defendants, and of any direct obligation of the latter to the former growing out of the contract or relation between the insured and the defendants, the loss of the plaintiffs, although due to the acts of the railroad company, being brought home to the insurers only through the artificial relation of contractors with the party who was the immediate subject of the wrong done by the railroad company, was a remote and indirect consequence of the misconduct of the defendants, and not actionable."
Since Connecticut Mutual, "[a]n examination of cases in which the economic loss rule has been a factor in denying recovery seems to show a pattern of the lack of any substantial relationship, contractual or otherwise, between the parties in those cases." RCD-Hudson v. T.A.T.Mason Enterprises, Inc., Superior Court, judicial district of Hartford, Docket No. 598478, (January 17, 2001, Beach, J.) (29 Conn.L.Rptr. 261, CT Page 1376 262).[3] In the present case, there is privity between the parties. Accordingly, the applicability of the economic loss doctrine to the present case is necessarily limited.
Because the parties to this action are in privity, the economic loss doctrine does not necessarily pose a bar to recovery under the circumstances of this case. As previously noted, as the plaintiff's allegations in counts two, four and five state intentional tort claims, Wild's motion to strike these counts on the ground that they are barred by the economic loss doctrine fails because, as allegations of tort, they could conceivably be "independent of the contractual breach." BradleyFactor, Inc. v. United States, supra, 86 F. Sup.2d 1146. Accordingly, the motion to strike counts two, four and five on the ground that they are barred by the economic loss doctrine is denied as to Wild.
II Whether Count Three of the Plaintiff's Revised Complaint (CUTPA) And The Corresponding Third Prayer For Relief Should Be Stricken On The Ground That The CUTPA Action Is Time Barred.
The defendants move to strike count three (CUTPA[4]) and its corresponding prayer for relief on the ground that it is time barred and fails to state a cause of action. According to the plaintiff, the defendants' breaches occurred as early as November 23, 1994, and continued throughout the pendency of the covenant not to compete, which expired on or about March 14, 1996. The defendants argue that the last possible act or omission that could be actionable under CUTPA occurred on March 14, 1996. The defendants argue that since the plaintiff's original complaint in this action was filed on January 23, 2001, more than three years after the last possible actionable occurrence, this action is time barred.
In opposition, the plaintiff argues that fraudulent concealment of CUTPA claims tolls the statute of limitations and that it has pleaded sufficient allegations to assert a claim in fraudulent concealment.[5]
The court disagrees that fraudulent concealment tolls the statute of limitations.
Ordinarily, a claim that an action is time barred by a statute of limitations must be pleaded as a special defense, not raised by a motion to strike. Girard v. Weiss, 43 Conn. App. 397, 415, 682 A.2d 1078
(1996), cert. denied, 239 Conn. 946, 686 A.2d 121 (1996). "In two limited situations, however, we will allow the use of a motion to strike to raise the defense of the statute of limitations. The first is when [t]he parties agree that the complaint sets forth all the facts pertinent to the question whether the action is barred by the Statute of Limitations and that, therefore, it is proper to raise that question by [a motion to CT Page 1377 strike] instead of by answer. . . . The second is where a statute gives a right of action which did not exist at common law, and fixes the time within which the right must be enforced. . . ." (Brackets in original; citation omitted; internal quotation marks omitted.) Forbes v. Ballaro,31 Conn. App. 235, 239-240, 624 A.2d 389 (1993). "The statute of limitations defense for CUTPA actions falls under the second exception to the general rule that the statute of limitations may not be raised on a motion to strike. . . . CUTPA is a statutory cause of action which did not exist at common law." (Citation omitted.) Gardella v. MetropolitanLife Ins. Co., Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 150585 (January 20, 2000, D'Andrea, J.)
General Statutes § 42-110g (f) provides that an action for damages under CUTPA "may not be brought more than three years after the occurrence of a violation of this chapter." The Connecticut Supreme Court has held that this three year period begins to run from the date of the actual violation rather than from the date of its discovery, and that for the purposes of setting the time when the three year period begins to run, there is no significant difference between language such as "occurrence of a violation" and "act or omission." Fichera v. Mine HillCorp., 207 Conn. 204, 212-13, 541 A.2d 472 (1988).
"Under our case law, to prove fraudulent concealment, the plaintiffs [are] required to show: (1) a defendant's actual awareness, rather than imputed knowledge, of the facts necessary to establish the plaintiffs' cause of action; (2) that defendant's intentional concealment of these facts from the plaintiffs; and (3) that defendant's concealment of the facts for the purpose of obtaining delay on the plaintiffs' part in filing a complaint on their cause of action." Bartone v. Robert L. DayCo., 232 Conn. 527, 533, 656 A.2d 221 (1995). The Connecticut Supreme Court has indicated that for the purposes of CUTPA violations, fraudulent concealment is synonymous with the statutory "deceptive act or practices" that comprise CUTPA violations: "Since CUTPA violations are defined in General Statutes § 42-110b to include `deceptive acts or practices in the conduct of any trade or commerce,' it is evident that the legislature intended that the perpetrators of such fraudulent practices, as well as other CUTPA violators, should be permitted to avail themselves of the statute of limitations defense provided by § 42-110g (f)." WillowSprings Condo Assn., Inc. v. Seventh BRT Development Corp., 245 Conn. 1,45, 717 A.2d 77 (1998). The lower court has been even more explicit: "The period of limitations for claims brought under CUTPA begins on the date that the unfair practice occurs. Even claims of fraudulent concealment do not toll the CUTPA statute." Ives v. NMTC, Inc., Superior Court, judicial district of Litchfield at Litchfield, Docket No. 073322 (46 Conn. Sup. 235,239, 746 A.2d 236) (December 16, 1999, Frazzini, J.). CT Page 1378
Accordingly, a claim of fraudulent concealment does not toll the statute of limitations set for CUTPA violations. Furthermore, in the present case the plaintiff's complaint is time barred because it was filed more than three years after the last possible actionable occurrence of the defendants' breach of the covenant not to compete. Therefore, the motion to strike count three with its corresponding third prayer for relief is granted.
III Whether The Second Prayer For Relief Should Be Stricken Insofar As The Complaint Seeks Liquidated Damages Because The Plaintiff Has Failed To Allege Facts That Would Support An Award of Liquidated Damages.
Citing Berger v. Shanahan, 142 Conn. 726, 732, 118 A.2d 311 (1955), the defendants argue that a party seeking to enforce a liquidated damages clause must demonstrate that (1) the damages expected to result as a breach of contract were uncertain in amount or difficult to prove at the time of contracting, (2) there was an intent on the part of the parties to liquidate damages in advance, and (3) the amount stipulated was reasonably proportionate to the amount of damages that, as the parties looked forward, seemed to be the presumable loss that would be sustained in the event of a breach. The defendants argue that the plaintiff has not pleaded any of the three conditions necessary to the enforcement of the provision; therefore, the motion to strike the second prayer for relief should be granted.
In opposition, the plaintiff argues that pleading the existence of a liquidated damages clause in a contract is sufficient to withstand a motion to strike.
"The allegations of a complaint subject to a motion to strike are entitled to the same favorable construction a trier would be required to give in admitting evidence under them and if the facts provable under its allegations would support . . . a cause of action, the motion to strike must fail." (Internal quotation marks omitted.) Faulkner v. UnitedTechnologies, supra, 240 Conn. 588.
In Vines v. Orchard Hills, Inc., 181 Conn. 501, 504, 435 A.2d 1022
(1980), where the defendant took the position that the plaintiff's complaint was demurrable,[6] the court ruled that questions surrounding a liquidated damages clause present "issues of fact which transcend the legal sufficiency of the complaint. . . ." Similarly, in denying a motion to strike, the court in Eaton v. New Haven Parking Authority, Superior Court, judicial district of New Haven at New Haven, Docket No. 414512 (April 12, 2000, Fracasse, J.), determined that the "enforceability of a limitation of liability clause is an issue of fact which cannot be determined until evidence has been gathered." CT Page 1379
In count one of his revised complaint, the plaintiff alleges the existence of a liquidated damages clause in his contract with the defendants. The defendants argue that the plaintiff has not pleaded any of the conditions necessary to the enforcement of the provision for liquidated damages. (Emphasis added.) Whether the liquidated damages provision in the subject contract is enforceable presents questions of fact that "transcend the legal sufficiency of the complaint." Vines v.Orchard Hills, Inc., supra, 181 Conn. 504. Accordingly the motion to strike the second prayer for relief is denied.
IV Whether The Second Prayer For Relief Should Be Stricken Insofar As It Seeks Attorney's Fees And Costs Of Litigation.
The plaintiff agrees with the defendants that the motion to strike the second prayer for relief should be granted to the extent of attorney's fees and costs.
 CONCLUSION
Therefore the motion to strike counts two, four and five on the ground that they are barred by the economic loss doctrine is denied as to Wild. The defendants' motion to strike count three and its corresponding prayer for relief is granted because that action is time barred. The defendants' motion to strike the second prayer for relief as to liquidated damages is denied because the plaintiff has pleaded a sufficient allegation with respect to liquidated damages. The plaintiff agrees with the defendants that the motion to strike the second prayer for relief should be granted to the extent of attorney's fees and costs and the second prayer for relief is therefor granted to that extent.
By the Court,
Bruce W. Thompson, Judge