[No. 13368-1-III.    Division Three.    December 6, 1994.]

BARBARA IWAI, ET AL, *Appellants*, v. THE STATE OF WASHINGTON, ET AL, *Respondents*.

*Richard C. Dullanty, Jr.*, for appellants.

*Christine O. Gregoire, Attorney General*, and *Elizabeth J. Erwin, Assistant; Judith A. Corbin, Christopher J. Wright*, and *Huppin, Ewing, Anderson*, for respondents.

THOMPSON, C.J. — Barbara Iwai[1] appeals the Superior Court's summary dismissal of WAM Enterprises, Inc., and

---

[1]The Plaintiffs are Barbara and George Iwai. We refer to them as Mrs. Iwai because she sustained the injury for which they seek damages.

the State of Washington from her action for damages for personal injury. Mrs. Iwai contends the court erred when it held (1) she named WAM as a Defendant after the statute of limitation expired, and (2) the State did not owe her a duty to protect her against the danger posed by a snowy and icy parking lot used by clients of the Washington State Employment Security Department. We affirm dismissal of WAM, but reverse dismissal of the State.

On November 29, 1984, Mrs. Iwai went to the employment security office in Spokane to check for work. She parked in a lot west of the office building in a space situated at an upward angle. The lot had been snowplowed on November 27. Mrs. Iwai stated the surface of the lot was covered with a light snow that had fallen the night before. There was no visible sand or de-icer. She stepped out of her vehicle and slipped, breaking her wrist. Mrs. Iwai testified the temperature during the 48 hours before her accident had varied from slightly above freezing to below freezing. Snow already on the ground had melted and refrozen, resulting in icy conditions.

Mrs. Iwai filed this negligence action on July 23, 1986, against the State of Washington and "John Doe" Defendants. In August 1987, she amended her complaint to name Hays Group, Inc., and Molokai Ranch (the same entity), who she believed owned the parking lot in which she fell. Hays/Molokai procured its interest from WAM in 1981. The record reflects WAM was the original owner of certain property at this location. It developed the property for business use, then leased to the State. It sold to Molokai in 1981. As part of this transaction, WAM assigned its leases with the State to Molokai.

In November 1989, counsel for Molokai advised the State and Mrs. Iwai she had discovered Molokai did not own the strip lot where Mrs. Iwai fell. The State owned the strip for future highway use. In 1982, WAM had leased the strip from the Department of Transportation. WAM constructed the parking lot on the strip and leased it to Employment Security.

Molokai contacted WAM with this information in June 1990. This contact was the first notice WAM had of the lawsuit. Subsequently, Hays/Molokai secured dismissal from Mrs. Iwai's action. Mrs. Iwai again amended her complaint, this time adding WAM as a Defendant. WAM agreed to the amendment on the condition it could raise procedural defenses at a later time. WAM moved to dismiss, contending Mrs. Iwai joined it too late. The trial court agreed and granted WAM's motion.

Meanwhile, Mrs. Iwai continued discovery in her action against the State. In 1984, John Lester was operations manager and the employee responsible for overseeing maintenance of the lot. He stated Employment Security contracted with R&N Maintenance Co., Inc., for snow removal. The contract provided the company would plow the lot automatically after a snowfall of 4 or more inches. Other service, including sanding and de-icing, was on a "by request" basis. Mr. Lester admitted he had problems keeping the parking lot de-iced where Mrs. Iwai fell. He also admitted Employment Security did spot-sanding when needed, although sanding was part of R&N's contract. According to an affidavit filed by Kenneth Cottingham, an engineer hired by Mrs. Iwai, the slope of the lot was such that without sanding and de-icing, persons "*would more probably than not . . .* slip and fall on the slope".

The State moved for summary dismissal. In granting the motion, the court held the fact the State had caused the lot to be plowed 2 days before Mrs. Iwai's fall did not make it responsible for the condition which resulted when residual snow melted, then refroze.

Mrs. Iwai appeals the orders dismissing WAM and the State.

### IWAI v. WAM

Mrs. Iwai contends the court erred when it held her action had not been timely filed against WAM. *See* RCW 4.16.080.[2] She proceeds on three separate theories, as follows:

---

[2]RCW 4.16.080 provides: "[W]ithin three years:

". . . .

"(2) An action for . . . injury to the person or rights of another . . .".

## A
### Statute of Limitation

First, Mrs. Iwai argues the statute of limitation was tolled when she filed her complaint and served one of the Defendants, the State, within 90 days of filing. She relies upon *Sidis v. Brodie/Dohrmann, Inc.*, 117 Wn.2d 325, 815 P.2d 781 (1991).

In *Sidis*, the court held the statute of limitation is tolled as to all *named* defendants if the complaint is filed within the limitation period and at least one of the defendants is served within 90 days of filing. *See* RCW 4.16.170.[3] Mrs. Iwai urges us to extend the holding in *Sidis* to unnamed "John Doe" defendants, such as she designated in her original complaint. We decline to do so.

As noted by the court in *Mergenthaler v. Asbestos Corp. of Am.*, 500 A.2d 1357, 1363 n.11 (Del. Super. Ct. 1985), "even in jurisdictions which permit a fictitious name practice it is not universally held that the statute of limitations is tolled until the true identity of the defendant is discovered . . .". Mrs. Iwai's broad designation of John Doe Defendants allegedly "negligent or otherwise responsible" does not sufficiently identify WAM so as to justify tolling the statute here. Our view is supported by *Kiehn v. Nelsen's Tire Co.*, 45 Wn. App. 291, 295, 724 P.2d 434 (1986), *review denied*, 107 Wn.2d 1021 (1987). Although decided before *Sidis, Kiehn* concluded the statute was not tolled in circumstances in which a named party was later substituted for a fictitious one. Instead, the plaintiff had to comply with the requirements of CR 15(c) for relation back of amendments. We hold the trial court correctly ruled WAM was added after expiration of the 3-year limitation period.

---

[3]RCW 4.16.170 provides: "For the purpose of tolling any statute of limitations an action shall be deemed commenced when the complaint is filed or summons is served whichever occurs first. If service has not been had on the defendant prior to the filing of the complaint, the plaintiff shall cause one or more of the defendants to be served personally, or commence service by publication within ninety days from the date of filing the complaint."

## B
## CR 15(c)

Second, Mrs. Iwai asserts her addition of WAM as a party related back under CR 15(c) to the date she filed the original complaint.[4]

CR 15(c) allows the plaintiff to amend pleadings to change a party against whom the claim is asserted, but only if the party has received "such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits . . .". CR 15(c) also requires the plaintiff to show the defendant knew or should have known the claim would have been brought against him, absent a mistake concerning the identity of the proper party. In addition to the requirements of the rule, the Washington Supreme Court has adopted a test which evaluates whether the failure to join the proper parties was due to excusable neglect. *South Hollywood Hills Citizens Ass'n for Preserv. of Neighborhood Safety & Env't v. King Cy.*, 101 Wn.2d 68, 77, 677 P.2d 114 (1984) (citing *North St. Ass'n v. Olympia*, 96 Wn.2d 359, 635 P.2d 721 (1981)).

We need not decide whether WAM was prejudiced in its defense by the late notice because it is clear WAM's joinder does not satisfy the second proviso of CR 15(c). Specifically, Mrs. Iwai has not shown WAM knew or should have known of the existence of her claim. Mrs. Iwai's argument that WAM would have known of her action, but for its decision not to record its lease of the property from the State, is not persuasive. While RCW 65.08.070 provides that conveyances of real property interests are void against bona fide purchasers for value if not recorded, Mrs. Iwai is not a bona fide purchaser. Moreover, if she ran a title search using the legal description for the property on which the strip lot was

---

[4]CR 15(c) reads: "An amendment changing the party against whom a claim is asserted relates back if . . . within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him."

located, she would have discovered the State owned it.[5] Presumably, once Mrs. Iwai learned the identity of the true owner, the identity of WAM as lessee would be forthcoming.

██ For the same reason, Mrs. Iwai has not shown the late joinder was the result of excusable neglect, the third prerequisite for relation back. "[I]nexcusable neglect exists when no reason for the initial failure to name the party appears in the record." *South Hollywood Hills*, at 78 (citing 3A Lewis H. Orland, Wash. Prac., *Rules Practice* § 5185 (Supp. 1991)). In *Hollywood Hills*, the issue was whether a homeowners association should be allowed to substitute the true owners of property which was the subject of a writ of review, for the party which it had originally named but who had sold the property 2 months before the institution of the association's action. The court held at page 78: "[H]ad the [association] or its counsel checked the county records, the proper parties would have been immediately evident. . . . This omission was inexcusable." *See also Tellinghuisen v. King Cy. Coun.*, 103 Wn.2d 221, 691 P.2d 575 (1984). The situation here is much like that in *Hollywood Hills*. A title report for the property on which Mrs. Iwai fell would have alerted her to the fact the State, not Molokai, was the owner.

We therefore hold the amendment adding WAM did not relate back to the original filing.

## C

### The Discovery Rule

Third, Mrs. Iwai maintains her cause of action did not accrue until she discovered WAM's identity as lessee of the strip lot.

Under the discovery rule, a cause of action does not accrue for purposes of the statute of limitation until the plaintiff knows or reasonably should know all the essential elements

---

[5]In argument before the trial court on WAM's motion for summary judgment, counsel for Mrs. Iwai asserted a title report was ordered and it did not reveal WAM's interest. But that is not the issue. If a title search was made, it would have shown the State, not Molokai, as the owner of the strip lot. That information was sufficient to put Mrs. Iwai on notice she was proceeding against the wrong entity. In addition, the fact the State had title to the strip lot would have been sufficient to put her on inquiry notice of a potential lessee of the lot in question.

of the action. *In re Estates of Hibbard*, 118 Wn.2d 737, 744-50, 826 P.2d 690 (1992). Mrs. Iwai relies upon *Orear v. International Paint Co.*, 59 Wn. App. 249, 796 P.2d 759 (1990), *review denied*, 116 Wn.2d 1024 (1991), a products liability case. There, the court held at page 255 that "knowledge or imputed knowledge of a particular defendant's identity is necessary for the plaintiff's cause of action against that defendant to accrue . . .". "Thus, the justification for the discovery rule as applied to unknown injury applies with equal force to unknown defendants." *Orear*, at 257. The court reversed the summary judgment obtained by the defendant because the question of when the plaintiff knew or should have known the defendant's identity presented an issue of material fact. *Orear*, at 257.

■ *Orear* is distinguishable. The basis of that decision is the fact the identity of the manufacturer or supplier of a defective product is not always readily available to a plaintiff. Here, the identity of the landowner was a matter of public record. Mrs. Iwai should have known Molokai was not the owner well before she added WAM as a defendant in her action. The discovery rule does not apply.[6]

Accordingly, we affirm the trial court's summary dismissal of WAM.

## Iwai v. State

Mrs. Iwai argues the court erred when it held she failed to present any evidence the condition of the parking lot was caused by negligence on the part of Employment Security.

■ In *Schaeffer v. Woodhead*, 63 Wn. App. 627, 630, 821 P.2d 75 (1991), this court held that a landowner owes no duty to protect persons from dangers created by natural accumulations of snow and ice upon his property. In a subse-

---

[6]Mrs. Iwai asserts she was misled because the State in its answer to an interrogatory filed in 1988 said it had no agreement with WAM in effect on the day of the accident. WAM is not responsible for the State's inaccurate answer. Moreover, the issue here is whether Mrs. Iwai could have discovered WAM's identity before expiration of the statute of limitation. We have held she was on inquiry notice of WAM's interest, given the fact the State, not Molokai, was the record owner of the property on which the parking lot was situated.

quent case, Division One of the Court of Appeals distinguished *Schaeffer. Sorenson v. Keith Uddenberg, Inc.*, 65 Wn. App. 474, 828 P.2d 650 (1992). The court held the rule stated in *Schaeffer* applied to natural accumulations only. In *Sorenson*, the hazard was caused by the refreezing of runoff from snow piles created by the plowing of the parking lot the previous day by agents of the defendants. *Sorenson*, at 479. The court reasoned: "If a party acts to correct a potentially dangerous condition, that party owes an independent duty to do so in a manner that is not negligent." *Sorenson*, at 479.

Here, a dispute of fact exists as to whether Employment Security was negligent when it failed to sand the parking lot after plowing it 2 days before Mrs. Iwai's accident. There is evidence of a causal connection between Employment Security's maintenance of the parking lot and the icy condition present when Mrs. Iwai fell. Employment Security was aware that sloped areas of the lot were potentially hazardous if ice formed. It had sand available to use if that situation occurred, but Mrs. Iwai saw no sand or de-icer in the area where she slipped. This evidence supports an inference that Employment Security knew from prior experience of the need for sanding when snowplowing left residual snow which melted and then refroze, and should have sanded the lot on the day in question.[7]

Since an issue of material fact exists, the trial court erred when it summarily dismissed Mrs. Iwai's claim against the State.

Affirmed in part and reversed in part.

MUNSON and SWEENEY, JJ., concur.

Review granted at 126 Wn.2d 1014 (1995).

---

[7]The State attacks Mr. Cottingham's affidavit, but it is not essential to the above analysis. His affidavit expressed his opinion that the parking lot design was defective and that sand or de-icer was necessary for safe use of the lot in the conditions present at the time of Mrs. Iwai's accident. But Mr. Cottingham's affidavit was not the only evidence on this subject. The same conclusions can be drawn from Mr. Lester's deposition testimony.