[No. 55973-7-I. Division One. May 22, 2006.]

ROBERTA CREECH, *as Personal Representative, Appellant*, v. AGCO CORPORATION ET AL., *Defendants*, OAKFABCO, INC., *Respondent*.

*Zachary B. Herschensohn* and *Scott A. Niebling* (of *Brayton Purcell*) (*Lloyd F. Leroy*, of counsel), for appellant.

*Robert G. André* and *Jeffrey D. Dunbar* (of *Ogden Murphy Wallace, P.L.L.C.*), for respondent.

¶1 BECKER, J. — Appellant's husband contracted cancer and died, allegedly due to exposure as a teenager to asbestos in a Kewanee boiler. Because his claim was not "existing and outstanding" at the time Oakfabco, Inc.'s predecessor assumed liability for claims arising out of Kewanee boilers, the trial court correctly concluded on summary judgment that Oakfabco is not liable on the claim. And cases cited by appellant do not support her argument that Oakfabco is collaterally estopped from denying its liability on the assumption agreement.

## FACTS

¶2 Roger Creech was diagnosed with a form of cancer called mesothelioma in June 2002. Mr. Creech filed an action in July 2002 against numerous defendants. He alleged that he was exposed to asbestos as a result of the defendants' negligence and contracted cancer as a result. A trial was set for March 2003.

¶3 In November 2002, Mr. Creech filed a motion for leave to add Oakfabco as a defendant. The trial court denied the motion but allowed him the option of adding Oakfabco as a defendant if he was willing to transfer the case to a later trial group. He chose to proceed to trial in March 2003 as scheduled, without Oakfabco. The jury returned a defense verdict.

¶4 In September 2003, Mr. Creech and his wife, Roberta, filed a similar complaint against Oakfabco and a number of other entities. Mr. Creech died from cancer two months later. In February 2004, Roberta Creech filed an amended complaint, as her husband's personal representative and on her own behalf, and added claims for survival and wrongful death. In early 2005, Oakfabco successfully moved for summary judgment. Ms. Creech asks this court to reverse the trial court's ruling and remand for trial. We review an order of summary judgment de novo. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

## SUCCESSOR LIABILITY

¶5 Ms. Creech's theory of Oakfabco's liability for her husband's death is based on his exposure to asbestos in 1962. At that time, he did maintenance work in the school he was attending. His work brought him in contact with asbestos contained in the boiler, a Kewanee boiler made in 1950.

¶6 The Kewanee boiler line was owned and operated as a division of American Standard, Inc., until 1970. In that year, American Standard sold the stock and assets of its Kewanee boiler division to a new corporation formed for that purpose, the Kewanee Boiler Corporation. For purposes of summary judgment, we shall assume that Oakfabco is merely a continuation of Kewanee Boiler Corporation after a name change and therefore has succeeded to whatever liabilities were assumed by Kewanee Boiler Corporation when it bought the Kewanee boiler division assets from American Standard.

¶7 The general rule in Washington is that a corporation purchasing the assets of another corporation does not, by reason of the purchase of assets, become liable for the debts and liabilities of the selling corporation. One exception to this rule occurs where the purchaser expressly or impliedly agrees to assume liability. *Hall v. Armstrong Cork, Inc.*, 103 Wn.2d 258, 261-62, 692 P.2d 787 (1984). Ms. Creech contends that Kewanee Boiler Corporation, Oakfabco's predecessor, expressly assumed liability for claims arising out of the old boilers. We conclude that Ms. Creech's claim is not among those for which the Kewanee Boiler Corporation assumed liability in 1970.

¶8 As part of the purchase and sale agreement on January 29, 1970, Kewanee Boiler Corporation agreed to assume and indemnify American Standard against certain liabilities of its Kewanee division "existing and outstanding at the Closing Date." Paragraph 1, "General Understanding," included a definition of the Kewanee boiler division liabilities:

"Kewanee Liabilities" as used in this Agreement shall mean all the debts, liabilities, obligations and commitments (fixed or contingent) connected with or attributable to Kewanee *existing and outstanding at the Closing Date*, including, but not limited to, the debts, liabilities and obligations, reflected on the Kewanee Balance Sheet together with any additions, deletions or changes resulting from Kewanee's operations in the ordinary course of business since December 31, 1969, to the Closing Date for which there will be no adjustment in the purchase price.[1]

¶9 Paragraph 6, "Closing," referred in section (B)(a) to an "undertaking" that Kewanee Boiler Corporation would give to American Standard on the closing date. In the undertaking, Kewanee Boiler Corporation would agree to assume all of Kewanee's liabilities and to indemnify American Standard against them:

B. On the Closing Date Buyer will deliver the following documents:

a. An executed undertaking wherein the Buyer will assume and agree to pay, and defend and hold Seller harmless against all Kewanee Liabilities, including, by way of specification but not limitation, the following:

(i) all liabilities and obligations of Kewanee shown on the Kewanee Balance Sheet;

(ii) all liabilities and obligations of Kewanee arising since December 31, 1969, to the Closing Date inclusive of advances made by Seller;

(iii) warranty, service, repair and return obligations of Kewanee *and other claims and complaints arising out of or in connection with any products manufactured, sold, leased or installed by Kewanee on or prior to the Closing Date*.[2]

¶10 On the closing date, March 2, 1970, Kewanee Boiler Corporation executed the "Buyer's Undertaking Delivered Pursuant to Paragraph 6Ba."[3] The undertaking recited that as the sale

---

[1] Clerk's Papers at 459-60 (emphasis added).

[2] Clerk's Papers at 463-64 (emphasis added).

[3] Clerk's Papers at 476.

had been consummated on that day pursuant to the January 1970 agreement, Kewanee Boiler Corporation agreed to assume certain liabilities, described as those "existing and outstanding at the date hereof":

> Buyer does hereby assume and agree to pay, perform and discharge, and to indemnify Seller with respect to, *all obligations, liabilities*, debts and commitments (fixed or contingent) connected with or attributable to Kewanee, *existing and outstanding at the date hereof*, including by way of specification, but not limitation, the following:
>
> (i) all liabilities and obligations of Kewanee shown on the Balance Sheet of Kewanee dated as of December 31, 1969, a copy of which is annexed hereto;
>
> (ii) all liabilities and obligations of Kewanee arising since December 31, 1969 to the date hereof inclusive of advances made by Seller;
>
> (iii) warranty, service, repair and return obligations of Kewanee *and other claims and complaints arising out of, or in connection with any products manufactured, sold, leased or installed by Kewanee on or prior to the date hereof*;
>
> . . . .
>
> The provisions contained herein is intended to represent the undertakings of, and assumption of liability by, Buyer as provided by the Agreement and *more specifically by Paragraph 6Ba* thereof and shall not be deemed as limiting or modifying such obligations of Buyer as provided in said Agreement.[4]

¶11  Ms. Creech focuses on the phrase in the undertaking by which Oakfabco assumed liability for "other claims and complaints arising out of, or in connection with any products manufactured, sold, leased or installed by Kewanee on or prior to the date hereof." Because her claim arises out of or in connection with a boiler manufactured, sold, or installed by Kewanee prior to 1970, she contends it was expressly assumed. The determinative phrase in the undertaking, however, is "existing and outstanding at the date hereof," to which all other descriptions of liabilities assumed are subordinate. Kewanee Boiler Corporation un-

---

4 Clerk's Papers at 476, 478 (emphasis added).

dertook to assume claims "arising out of" the older boilers only if those claims were "existing and outstanding" in 1970.

¶12 Roger Creech was exposed to asbestos in 1962, but Ms. Creech fails to demonstrate that he had a claim that was "existing and outstanding" in 1970. It was not until 2002 that he learned of his disease. We conclude the undertaking by the Kewanee Boiler Corporation did not assume liability for the claim asserted by Ms. Creech in this lawsuit.

## COLLATERAL ESTOPPEL

¶13 Ms. Creech contends, however, that Oakfabco is collaterally estopped from denying that Kewanee Boiler Corporation expressly assumed liability for personal injury claims such as hers that arise from Kewanee boilers made before 1970. She claims the issue has already been decided against Oakfabco by other courts.

¶14 Ms. Creech did not squarely present this argument in her responding brief below. Challenging as a "red herring" Oakfabco's assertion that she was herself collaterally estopped from bringing the present claim, her brief stated that Oakfabco's denial of liability "amounts to nothing more than an elaborate shell game that Oakfabco plays as a matter of course whenever it is sued." A footnote in her brief says, "Oakfabco has raised this issue in previous litigation and lost. *See* John Purcell et al. v Oakfabco Inc."[5]

¶15 Ms. Creech does not cite authority for the proposition that she may raise collateral estoppel for the first time on appeal, and we are doubtful that the issue has been preserved. But even if it has been, it does not lead to a different result.

¶16 Before the doctrine of collateral estoppel may be applied, the party asserting the doctrine must prove the issue decided in the prior adjudication is identical with the

---

[5] Clerk's Papers at 130.

one presented in the second action, the prior adjudication must have ended in a final judgment on the merits, the party against whom the plea is asserted was a party or in privity with the party to the prior adjudication, and application of the doctrine does not work an injustice. *Nielson v. Spanaway Gen. Med. Clinic, Inc.*, 135 Wn.2d 255, 262-63, 956 P.2d 312 (1998).

¶17 At most, the cases cited by Ms. Creech decide only that Oakfabco is liable as a successor for personal injury claims that were assumed by Kewanee Boiler Corporation in the 1970 undertaking. They do not decide that the claims assumed in 1970 necessarily included claims that would arise in the future. A Minnesota state court concluded that the undertaking assumed liability for personal injury claims, not just property damage claims. *Chute v. Rozman*, No. 460444 (JPS) (Dist. Ct. Minn. Oct. 2, 1984). A New York trial court, in a nonfinal disposition, denied Oakfabco's motion for summary judgment in which Oakfabco sought to establish that American Standard bore sole responsibility for injuries caused by exposure to Kewanee boilers. *Anastasio v. A.O. Smith Prods.*, Civ. 105467/2003 (HEF) (Sup. Ct. N.Y. County June 4, 2004). A bankruptcy court held that an unnotified postpetition claimant could not be enjoined from collecting on the claim against Oakfabco outside of the bankruptcy proceeding but found it lacked jurisdiction to decide the issue of Oakfabco's potential liability; whether the claimant had any right to collect at all was referred to a state court. *In re Kewanee Boiler Corp.*, 198 B.R. 519, 525 (N.D. Ill. 1996). And a California appellate court relied in part on the language of the undertaking to conclude that Oakfabco still has the liabilities of American Standard that were assumed by Kewanee Boiler Corporation in the 1970 sale, including liability for tort claims "arising from" Kewanee products. *Purcell v. Oakfabco, Inc.*, No. A100654, 2004 Cal. App. Unpub. LEXIS 2837 (Mar. 26, 2004). Because these courts were not confronted as we are with the necessity to decide whether the "arising out of" clause in

the undertaking is limited by the "existing and outstanding" clause, the element of identity of issues required for collateral estoppel is lacking.

¶18 As an alternative basis for granting summary judgment, the trial court found that Oakfabco's liability for tort claims arising out of pre-1970 Kewanee boilers was discharged in bankruptcy proceedings. Because we have concluded that Ms. Creech's claim was not assumed in 1970 by Oakfabco's predecessor, we need not decide whether the bankruptcy discharged Oakfabco's liability for such claims as were assumed.

¶19 Affirmed.

Cox and Dwyer, JJ., concur.