# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| NINA L. MARTIN, individually and as Personal Representative of the ESTATE OF DONALD R. MARTIN, RUSSELL L. MARTIN, THADDEUS J. MARTIN, and JANE MARTIN, | ) ) ) ) ) ) | NO. 68132-0-I

DIVISION ONE |
| Appellants, | ) ) ) | |
| v. | ) ) | |
| | ) | UNPUBLISHED OPINION |
| DEMATIC dba/fka RAPISTAN, INC., MANNESMANN DEMATIC, and SIEMENS DEMATIC; GENERAL CONSTRUCTION COMPANY, WRIGHT SCHUCHART HARBOR COMPANY, WRIGHT SCHUCHART, INC.; FLETCHER GENERAL, INC., and FLETCHER CONSTRUCTION COMPANY NORTH AMERICA and FLETCHER BUILDING, LTD., | ) ) ) ) ) ) ) ) ) ) ) | |
| Respondents. | ) ) ) | FILED: October 14, 2013 |

LEACH, C.J. — Donald Martin suffered a fatal injury while working at a Kimberly Clark paper plant. His wife and children (collectively "the Martins") appeal the trial court's summary dismissal of their claims against General Construction Company (General Construction) and Fletcher Construction Company North America (FCCNA). General Construction cross appeals, challenging the trial court's denial of two summary judgment motions.

Because General Construction did not assume liability for the Martins' claims and the statute of limitations barred the claims against FCCNA, we affirm the trial court's dismissal of Martins' claims against General Construction and FCCNA. Because a trial court's decision denying a motion for summary judgment does not constitute a final judgment, we do not address General Construction's cross appeal.

## FACTS

On August 13, 2004, a component of Tissue Machine No. 5 (TM5) at Kimberly Clark's Everett paper plant fatally crushed Donald Martin. The TM5 was installed as part of a large construction project in 1981 when Scott Paper owned the plant. Wright Schuchart Harbor Co. (WSH) erected the TM5.

The parties dispute WSH's identity and ownership history. General Construction asserts the following history. At the time of the TM5 installation, Wright Schuchart Inc. owned WSH. In 1987, Fletcher Construction Company Ltd., a subsidiary of FCCNA, purchased Wright Schuchart Inc. At the time, FCCNA was a subsidiary of Fletcher Challenge, a multinational corporation involved in industrial construction. In 1993, Fletcher Challenge merged numerous subsidiaries, including WSH, into a single company, Fletcher General Inc. Fletcher General succeeded to WSH's preexisting liabilities.

In 1996, senior management of Fletcher General formed GC Investment Co. for the purpose of acquiring the majority of Fletcher General's assets. To complete this acquisition, Fletcher General transferred these assets to a wholly owned subsidiary, General Construction, and in exchange received all the outstanding stock of General. Fletcher General sold this stock to GC Investment. Their stock purchase agreement incorporated as exhibits a memorandum of transfer of assets for capital contribution purposes and two memoranda of assumption of liabilities executed by Fletcher General and General Construction to accomplish the asset transfer to General Construction. Both the stock purchase agreement and the memoranda of assumption of liabilities, in virtually identical language, defined and allocated "assumed liabilities," which General Construction acquired, and "excluded liabilities," which Fletcher General retained. Fletcher General agreed to indemnify General Construction for excluded liabilities.

In 2001, Fletcher General and Fletcher Construction Company Ltd. merged into FCCNA. Following the merger, General Construction and FCCNA agreed that FCCNA would continue to exist until at least 2006 and maintain a minimum bond or level of assets to cover its potential liabilities. FCCNA filed a certificate of dissolution on June 26, 2007.

FCCNA asserts that "Wright Schuchart Harbor Joint Venture," a "separate and distinct corporate legal entity" from Wright Schuchart Inc. or Wright Schuchart Company, installed TM5.[1] In interrogatories, Ronald Johnson, FCCNA's records custodian, stated,

> The entities which previously comprised of Wright Schuchart Harbor Joint Venture had changed their names as necessary and were transferred to Sprague Resources Corporation as dividends by June 30, 1987 prior to the sale of Wright Schuchart, Inc. to Fletcher. Thus, these entities were not included in the sale of Wright Schuchart, Inc. to Fletcher in October 1987.

Johnson also testified that the joint venture "would be labeled Wright Schuchardt [sic] Harbor, a joint venture, or sometimes it was labeled just Wright Schuchardt [sic] Harbor. And that joint venture was owned by several different entities, which did not include Wright Schuchardt, [sic] Incorporated."[2]

On June 29, 2007, the Martins filed this wrongful death and survival action against defendants that the Martins alleged were responsible for Mr. Martin's death, including "General Construction Company dba/fka Wright Schuchart Harbor Company." The complaint did not name FCCNA as a defendant. On October 19, 2007, General Construction answered the Martins' complaint and asserted third party claims against Fletcher General and Fletcher Pacific

---

[1] FCCNA did not raise this argument in its motion to dismiss, but the court referred to it in granting the dismissal.

[2] The record does not contain the equipment erection contract. We do not resolve the conflicting histories but use "WSH" to refer to whichever entity installed the TM5.

-4-

Construction Company Ltd. (Fletcher Pacific). On December 11, 2009, General Construction moved for summary judgment, asserting that it was not liable as a successor to WSH. The trial court denied the motion on March 16, 2010.

The Martins filed an amended complaint on January 22, 2010, joining FCCNA as a defendant. In its answer to the amended complaint, FCCNA raised the statute of limitations as an affirmative defense.

On April 8, 2010, the Martins moved for summary judgment to establish General Construction's liability as a successor to WSH and Fletcher General. The court denied this motion. On October 1, 2010, General Construction filed a renewed motion for summary judgment based on the lack of successor liability. The trial court granted this motion and denied the Martins' subsequent motion for reconsideration.

On November 23, 2010, FCCNA moved to dismiss, arguing that "the statute of limitations for plaintiffs' claims against this defunct corporation had expired by January 2010 when FCCNA was added as a party to this lawsuit." The court granted the motion on January 13, 2011, and denied the Martins' subsequent motion for reconsideration. It concluded that the Martins' amended complaint did not relate back to the date of the original complaint under CR 15(c). The Martins appeal, and General Construction cross appeals.

## STANDARD OF REVIEW

We review summary judgment orders de novo, engaging in the same inquiry as the trial court.[3] Summary judgment is proper if, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.[4] A genuine issue of material fact exists if reasonable minds could differ about the facts controlling the outcome of the litigation.[5]

In reviewing summary judgment orders, we consider supporting affidavits and other admissible evidence based upon the affiant's personal knowledge.[6] "A party may not rely on mere allegations, denials, opinions, or conclusory statements, but, rather must set forth specifics indicating material facts for trial."[7] We review the denial of a motion for reconsideration for abuse of discretion.[8]

## ANALYSIS

The Martins raise two sets of issues. First, the Martins assert that General Construction assumed successor liability for WSH's torts under the stock

---

[3] Michak v. Transnation Title Ins. Co., 148 Wn.2d 788, 794, 64 P.3d 22 (2003).
[4] CR 56(c); Michak, 148 Wn.2d at 794-95.
[5] Hulbert v. Port of Everett, 159 Wn. App. 389, 398, 245 P.3d 779, review denied, 171 Wn.2d 1024 (2011).
[6] Int'l Ultimate, Inc. v. St. Paul Fire & Marine Ins. Co., 122 Wn. App. 736, 744, 87 P.3d 774 (2004).
[7] Int'l Ultimate, Inc., 122 Wn. App. at 744.
[8] Brinnon Grp. v. Jefferson County, 159 Wn. App. 446, 485, 245 P.3d 789 (2011) (citing Lilly v. Lynch, 88 Wn. App. 306, 321, 945 P.2d 727 (1997)).

purchase agreement and memoranda of assumption of liabilities. Second, the Martins assert that the statute of limitations does not bar their claims against FCCNA because those claims did not accrue until the Martins discovered FCCNA's identity as WSH's successor, that the filing and serving of the original summons and complaint tolled the statute of limitations, and that the amended complaint related back to the date of the original complaint for purposes of the statute of limitations. We disagree.

Successor Liability

The Martins claim that General Construction "expressly assumed liability for tort claims such as those alleged by the Martin family under the terms of the Stock Purchase Agreement and the two Memoranda of Assumption of Liabilities" with Fletcher General, WSH's successor. In Washington, a corporation purchasing another corporation's assets generally "does not, by reason of the purchase of assets, become liable for the debts and liabilities of the selling corporation."[9] This rule does not apply if "the purchaser expressly or impliedly agrees to assume liability."[10] Martin claims that this exception applies here.

The stock purchase agreement stated that General Construction would, as of the organization date, assume "all of the Assumed Liabilities to which Seller

---

[9] Creech v. AGCO Corp., 133 Wn. App. 681, 684, 138 P.3d 623 (2006) (citing Hall v. Armstrong Cork, Inc., 103 Wn.2d 258, 261, 692 P.2d 787 (1984)).
[10] Creech, 133 Wn. App. at 684 (citing Hall, 103 Wn.2d at 261-62).

was subject as of the Organization Date." (Emphasis added.) The agreement also stated that, at closing, General Construction "shall assume from Seller all additional Assumed Liabilities to which Seller becomes subject between the Organization Date and the Closing Date." The organization date was October 10, 1996, and the closing date was October 17, 1996. The stock purchase agreement required General Construction to deliver two separate "memorand[a] of assumption of liabilities" at closing, one effective as of the organization date and the other effective as of the closing date.

The stock purchase agreement defined "assumed liabilities":

"Assumed Liabilities" means the obligations, liabilities and expenses of Seller or General included in clauses (i) through (ix) below, except to the extent any such obligations, liabilities and expenses are covered by insurance, held by Seller with respect to events occurring prior to Closing, in which case they shall constitute Excluded Liabilities:

. . . .

(iii) All extraordinary liabilities of Seller or General incurred outside the ordinary course of business of Seller or General after July 1, 1996 and that are not accounted for as project costs under any Pre 7/23 Bonded Jobs in accordance with Seller's existing project accounting practices, including, without limitation:

(A) all liabilities and obligations arising out of, resulting from, or relating to claims, whether founded upon negligence, strict liability in tort, and/or other similar legal theory, seeking compensation or recovery for or relating to injury to person or damage to property with respect to the operation of the Business;

. . . .

> provided, that, the Assumed Liabilities shall not include any extraordinary liabilities of Seller incurred by Seller after the Closing with respect to the portion of the Business retained by Seller, or any other activities of Seller unrelated to the Business.

The agreement also defined "excluded liabilities," which included "[a]ll obligations or liabilities of the Business, Seller or any of its Affiliates of any nature whatsoever, arising with respect to any acts, actions, omissions, or events occurring prior to July 1, 1996."

Both memoranda of assumption of liabilities defined "assumed" and "excluded" liabilities similar to the stock purchase agreement. The memoranda also stated,

> General Construction Company . . . does hereby assume and accept from Fletcher General, Inc., . . . the liabilities and obligations described on the attached Schedule A (the "Assumption," the liabilities and obligations described on attached Schedule A being the "Assumed Liabilities"). No assumption or acceptance of the liabilities or obligations described on attached Schedule B (the "Excluded Liabilities") is intended or is hereby effected.

The Martins argue that the phrase "to which Seller was subject" in the stock purchase agreement description of assumed liabilities includes "inchoate or contingent future liabilities." They assert, "The Organization Date Memorandum of Assumption of Liabilities . . . does not limit the assumption to only those liabilities incurred between July 1, 1996, and the Organization or Closing Dates." The Martins contend, "To harmonize these provisions of the agreement and give

effect to all of them," the stock purchase agreement "should be understood as applying to the organizational phase of the transaction rather than closing, . . . and the meaning of the phrase 'subject to' should be understood as including both existing and future liabilities."

General Construction claims that it assumed only "(1) liabilities to which Fletcher General was subject as of October 10, 1996 (the Organization Date), and (2) additional liabilities to which Fletcher General became subject between October 10, 1996 (the Organization Date) and October 17, 1996 (the Closing Date)." Because Mr. Martin died in 2004, General Construction did not assume liability for his death.

We conclude that General Construction did not assume liability for the Martins' claims. Because Mr. Martin's injuries occurred in 2004, Fletcher General was not subject to these claims at any time before the closing of the stock sale. Thus, the Martins' claims do not satisfy the definition of "assumed liabilities." The Martins offer no authority to support their contrary interpretation.

Additionally, if we accept the Martins' construction of the phrase "to which Seller was subject," their claims fall squarely within the definition of "excluded liabilities." This definition included as "excluded liabilities" "[a]ll obligations or liabilities of the Business, Seller or any of its Affiliates of any nature whatsoever,

-10-

arising with respect to any acts, actions, omissions or events occurring prior to July 1, 1996."

The "act" that gave rise to the Martins' claims was the installation of a defective component of the TM5, which occurred in 1981. From 1996 until 2008, General Construction performed certain services "related to TM5 or in the area of TM5 at the direction of Kimberly Clark." But the Martins offer no evidence showing that WSH or General Construction performed any work on or after July 1, 1996, that contributed to Mr. Martin's death. Therefore, General Construction did not assume the liability, and the trial court properly granted summary judgment on this claim and denied the Martins' motion for reconsideration.

Statute of Limitations

The Martins also challenge the dismissal of their claims against FCCNA based upon the three-year statute of limitations for personal injury actions, RCW 4.16.080(2). Mr. Martin's injuries occurred on August 13, 2004. The Martins filed their original complaint on June 29, 2007, within the three-year limitation period, but did not file their amended complaint joining FCCNA as a defendant until January 22, 2010, well outside the three-year limitation period.

The Martins challenge the court's dismissal on three grounds: (1) the claims did not accrue against FCCNA until the Martins discovered that FCCNA was WSH's successor, (2) filing the initial summons and complaint and serving

-11-

the other defendants tolled the statute of limitations under RCW 4.16.170, and (3) the amendment naming FCCNA relates back to the filing date of the original complaint under CR 15(c) because the amendment merely corrected a misnomer and FCCNA had actual notice of the complaint within the limitations period. We affirm the dismissal and also the denial of the Martins' motion for reconsideration.

The Martins assert that their claims against FCCNA did not accrue until they discovered FCCNA's identity as a successor to WSH. They allege that they first learned FCCNA was a successor in December 2009 when General Construction filed a motion for summary judgment stating that FCCNA "had succeeded the liabilities of WSH." The Martins argue that FCCNA's identity as a successor to WSH was "obscure" because of "a series of complex and non-public mergers and acquisitions over an extended period of time."

The statute of limitations is an affirmative defense.[11] The party asserting the defense—here, FCCNA—bears the burden of proving facts that establish it.[12] In Washington, when a delay occurs between the time of an injury and the plaintiff's discovery of that injury, the court may apply the discovery rule.[13] This rule tolls the date of accrual "until the plaintiff knows or, through the exercise of

---

[11] Brown v. ProWest Transp. Ltd., 76 Wn. App. 412, 419, 886 P.2d 223 (1994) (citing Haslund v. City of Seattle, 86 Wn.2d 607, 620, 547 P.2d 1221 (1976)).

[12] Brown, 76 Wn. App. at 419 (citing Haslund, 86 Wn.2d at 620-21).

[13] Giraud v. Quincy Farm & Chem., 102 Wn. App. 443, 449, 6 P.3d 104 (2000) (citing Crisman v. Crisman, 85 Wn. App. 15, 20, 931 P.2d 163 (1997)).

due diligence, should have known all the facts necessary to establish a legal claim."[14] A plaintiff asserting this discovery rule must show that he or she could not have discovered the relevant facts earlier.[15] The jury determines whether the plaintiff meets this burden, unless the facts are susceptible of only one reasonable interpretation.[16]

The Martins cite Orear v. International Paint Co.[17] to support their argument. But Orear was a products liability case where the connection between the plaintiff's latent injury and the allegedly defective product was "difficult to trace."[18] Here, the connection between the injury and its cause is clear.

In In re Estates of Hibbard,[19] our Supreme Court held that the discovery rule applies only to claims "in which the plaintiffs could not have immediately known of their injuries due to professional malpractice, occupational diseases, self-reporting or concealment of information by the defendant" and to "claims in which plaintiffs could not immediately know of the cause of their injuries."[20]

---

[14] Giraud, 102 Wn. App. at 449 (citing Crisman, 85 Wn. App. at 20; Allen v. State, 118 Wn.2d 753, 758, 826 P.2d 200 (1992)).

[15] Giraud, 102 Wn. App. at 449-50 (citing G.W. Constr. Corp. v. Prof'l Serv. Indus., Inc., 70 Wn. App. 360, 367, 853 P.2d 484 (1993)).

[16] Giraud, 102 Wn. App. at 450 (citing Goodman v. Goodman, 128 Wn.2d 366, 373, 907 P.2d 290 (1995)).

[17] 59 Wn. App. 249, 796 P.2d 759 (1990).

[18] Orear, 59 Wn. App. at 256.

[19] 118 Wn.2d 737, 749-50, 826 P.2d 690 (1992).

[20] Schwindt v. Commonwealth Ins. Co., 94 Wn. App. 504, 509 n.10, 972 P.2d 570 (1999), rev'd on other grounds by 140 Wn.2d 348, 997 P.2d 353 (2000).

Where Washington courts have applied the rule, the plaintiff has lacked the means or ability to ascertain that a legal cause of action accrued.

FCCNA's identity as a successor was a matter of public record when the Martins filed their initial complaint. Despite the Martins' allegation that "[n]one of the records refer[s] to WSH, let alone connect[s] the dots between WSH and FCCNA," an examination of the documents suggests otherwise. The record contains the articles of incorporation of Wright Schuchart Inc., dated May 27, 1976; the articles of amendment changing name from Wright Schuchart Inc. to Fletcher General Inc., dated March 1, 1993; and the articles of merger of Fletcher General Inc. into Fletcher Construction Company North America, dated March 29, 2001. Additionally, an article published in The Seattle Times newspaper in 1993, as well as a page on General Construction's web site, describe WSH's corporate history. Because the Martins were on inquiry notice that FCCNA was a successor, we decline to apply the discovery rule and conclude that the Martins' claim began to accrue from the time of Mr. Martin's accident.

The Martins also argue that filing their initial complaint and summons and serving the other defendants tolled the statute of limitations under RCW 4.16.170. Accordingly, the Martins claim, their amended complaint naming FCCNA was timely.

RCW 4.16.170 states, "For the purpose of tolling any statute of limitations an action shall be deemed commenced when the complaint is filed or summons is served whichever occurs first." After filing the complaint, the plaintiff "shall cause one or more of the defendants to be served personally, or commence service by publication within ninety days."

The Martins cite Sidis v. Brodie/Dohrmann, Inc.,[21] a case that involved multiple defendants, to support their assertion. In Sidis, our Supreme Court held that, under RCW 4.16.170, serving one named defendant tolls the statute of limitations regarding any unserved named defendant.[22] The Sidis court stated that the case did not concern unnamed defendants.[23] In dictum, it noted that "in some cases, if identified with reasonable particularity, 'John Doe' defendants may be appropriately 'named' for purposes of RCW 4.16.170."[24] The Martins argue that we should apply the dictum in Sidis as law, asserting that Iwai v. State,[25] a Division Three case, and Bresina v. Ace Paving Co.,[26] a Division Two decision, support this approach.

---

[21] 117 Wn.2d 325, 815 P.2d 781 (1991).
[22] Sidis, 117 Wn.2d at 329.
[23] Sidis, 117 Wn.2d at 331.
[24] Sidis, 117 Wn.2d at 331.
[25] 76 Wn. App. 308, 884 P.2d 936 (1994).
[26] 89 Wn. App. 277, 948 P.2d 870 (1997).

In Iwai, the court declined to extend the holding in Sidis to "unnamed 'John Doe' defendants,"[27] and it did not explicitly discuss or cite the dictum in its opinion. The court explained, "'[E]ven in jurisdictions which permit a fictitious name practice it is not universally held that the statute of limitations is tolled until the true identity of the defendant is discovered.'"[28] Nonetheless, Division Three concluded in Iwai that a "broad designation of John Doe Defendants allegedly 'negligent or otherwise responsible'" did not identify the later-named defendant sufficiently to justify tolling the statute of limitations.[29]

In Bresina, the plaintiff served at least one named defendant before the statute of limitations expired but filed an amended complaint substituting Ace Paving for unnamed defendant "ABC Corporation" after it expired.[30] The court stated that it was not clear whether Iwai rejected the Sidis dictum or whether Division Three "assumed the validity of the Sidis dictum while holding that its requirements were not met by Iwai's description" of the unnamed defendant.[31] In Bresina, Division Two applied the latter approach and "assume[d] that a plaintiff can toll the period for suing an unnamed defendant by timely filing and serving a named defendant—if, but only if, the plaintiff identifies the unnamed defendant

---

[27] Iwai, 76 Wn. App. at 312.
[28] Iwai, 76 Wn. App. at 312 (quoting Mergenthaler v. Asbestos Corp. of Am., 500 A.2d 1357, 1363 n.11 (Del. Super. Ct. 1985)).
[29] Iwai, 76 Wn. App. at 312.
[30] Bresina, 89 Wn. App. at 279.
[31] Bresina, 89 Wn. App. at 281-82.

with 'reasonable particularity' before the period for filing suit expires."[32] The court determined that the plaintiff's description of the unnamed defendant did not identify the defendant with "reasonable particularity."[33] It reasoned that the plaintiff could have obtained the name by proper investigation or by filing a complaint and seeking discovery.[34] The court explained that a major factor in determining "reasonable particularity" is

> the nature of the plaintiff's opportunity to identify and accurately name the unnamed defendant; if a plaintiff identifies a party as "John Doe" or "ABC Corporation," after having three years to ascertain the party's true name, it will be difficult to say, at least in the vast majority of cases, that the plaintiff's degree of particularity was "reasonable."[35]

The plaintiff offered no reason for failing to obtain Ace Paving's true name during the limitations period.[36] No published Division One decision has addressed this issue.

The Martins argue that RCW 23B.11.060(1) "confirm[s] the identity of interest between the merged corporation and its successor, so that following merger, naming the merged corporation in a lawsuit is equivalent to describing the surviving corporation with reasonable particularity." They state that they "[do] not seek to impose liability" under this statute but cite the law "to illustrate the

---

[32] Bresina, 89 Wn. App. at 282.
[33] Bresina, 89 Wn. App. at 282.
[34] Bresina, 89 Wn. App. at 282.
[35] Bresina, 89 Wn. App. at 282.
[36] Bresina, 89 Wn. App. at 282.

identity of interest between a predecessor and successor corporation and how the reasonable particularity standard of Sidis has been satisfied."

Under RCW 23B.11.060(1)(d), when a merger takes effect, "[a] proceeding pending against any corporation party to the merger may be continued as if the merger did not occur or the surviving corporation may be substituted in the proceeding for the corporation whose existence ceased." This statute allows a plaintiff's action against a defunct entity to continue if the lawsuit was pending at the time of the merger. The Martins' action was not pending at the time of any merger. The most recent merger occurred in 2001, three years before Mr. Martin's death, when Fletcher General merged with FCCNA. The Martins cite no authority demonstrating that identifying a defunct corporation well after the statute of limitations expired, and long after a merger took place, constitutes "reasonable particularity."

Because the Martins neither named FCCNA as a defendant in the original complaint nor served the company, serving the named defendants did not toll the statute of limitations as to FCCNA. No court in Washington has explicitly stated that the Sidis dictum is law or recognized the statute of limitations as being tolled as to a defendant who is neither named in the complaint nor served within the limitations period. The filing of the initial complaint did not toll the three-year statute of limitations.

-18-

The Martins also claim that their amended complaint naming FCCNA was timely because the amendment related back to the date of the original complaint for purposes of the statute of limitations under CR 15(c). When reviewing a trial court's determination of relation back, we look to whether the requirements of CR 15(c) have been met.[37] "Some opinions do refer to abuse of discretion as the standard for reviewing a decision under CR 15(c), probably because the issue often arises in connection with a motion for leave to amend."[38] This case does not concern whether the court properly granted the Martins' motion for leave to amend its complaint.

CR 15(c) states, "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." When an amended complaint adds or substitutes a new party, the amended complaint relates back to the date of the original complaint if the party seeking to amend proves that it has satisfied three conditions:[39] (1) the new party received notice of the institution of the action so

---

[37] Perrin v. Stensland, 158 Wn. App. 185, 193, 240 P.3d 1189 (2010).

[38] Perrin, 158 Wn. App. at 192. The parties dispute the correct standard of review.

[39] Segaline v. Dep't of Labor & Indus., 169 Wn.2d 467, 476-77, 238 P.3d 1107 (2010) (citing Foothills Dev. Co. v. Clark County Bd. of County Comm'rs, 46 Wn. App. 369, 375, 730 P.2d 1369 (1986)).

that he or she will not be prejudiced in making a defense on the merits;[40] (2) the new party knew or should have known that but for a mistake concerning the proper party's identity, the plaintiff would have brought the action against him or her;[41] and (3) the plaintiff's delay in adding the new party was not due to "inexcusable neglect."[42] "'[I]nexcusable neglect exists when no reason for the initial failure to name the party appears in the record.'"[43] It includes delay due to "'a conscious decision, strategic or tactic.'"[44] Whether the party seeking to amend its complaint satisfies these conditions is an issue of fact.[45]

"CR 15(c) is to be liberally construed on the side of allowance of relation back of an amendment that adds or substitutes a new party after the statute of limitations has run, particularly where the opposing party will be put to no disadvantage."[46] But when applying CR 15(c), the court must protect the new

---

[40] Segaline, 169 Wn.2d at 476-77 (citing CR 15(c)).
[41] Segaline, 169 Wn.2d at 477 (citing CR 15(c)).
[42] Segaline, 169 Wn.2d at 477 (citing Stansfield v. Douglas County, 146 Wn.2d 116, 122, 43 P.3d 498 (2002)). "Adding a new party requires a showing that it was not due to 'inexcusable neglect' because amendment of a complaint is not intended to serve as a mechanism to circumvent or extend a statute of limitations." Segaline, 169 Wn.2d at 477 n.9.
[43] Segaline, 169 Wn.2d at 477 (alteration in original) (internal quotation marks omitted) (quoting Stansfield, 146 Wn.2d at 122).
[44] Segaline, 169 Wn.2d at 477 (quoting Stansfield, 146 Wn.2d at 121).
[45] Segaline, 169 Wn.2d at 477.
[46] Perrin, 158 Wn. App. at 194.

defendant's due process rights—"an opportunity to be heard at a meaningful time and in a meaningful manner."[47]

Here, the parties do not dispute that the claims the Martins asserted in the amended complaint arose out of the same conduct, transaction, or occurrence set forth in the original pleading. The Martins cite Bailey v. Innovative Management & Investment, Inc.[48] and Mitchell v. CFC Financial LLC,[49] cases outside this jurisdiction, to argue that their amended complaint related back because the amendment did not add a new party but merely corrected a misnomer.

The Martins filed the amended complaint approximately three years after the statute of limitations expired. The trial court assumed the Martins could establish that FCCNA received notice of the lawsuit on July 25, 2007, when General Construction purportedly tendered defenses to Fletcher General. General Construction tendered the defenses under the 1996 stock purchase agreement, in which Fletcher General agreed to "defend, indemnify and hold General harmless" from claims regarding excluded liabilities. The court noted,

---

[47] Pub. Util. Dist. No. 1 of Klickitat County v. Walbrook Ins. Co., 115 Wn.2d 339, 349, 797 P.2d 504 (1990) (citing Wilson v. Bd. of Governors, Wash. State Bar Ass'n, 90 Wn.2d 649, 656, 585 P.2d 136 (1978)).
[48] 890 S.W.2d 648 (Mo. 1994).
[49] 230 F.R.D. 548 (E.D. Wis. 2005).

however, that "the exhibit provided by Plaintiff in this regard was not properly authenticated."

The Martins provide no evidence to support the second condition—that FCCNA knew or should have known that but for a mistake, it would have been named in the original complaint. They contend that FCCNA "had at least constructive knowledge that it was mistakenly omitted from the original complaint" "based on naming . . . its predecessor WSH as a defendant in the original complaint, the tender of defense by General Construction, and FCCNA's forwarding the tender letter to its insurer." But, as the trial court explained, FCCNA argues that Wright Schuchart Harbor Joint Venture, an entity whose assets and liabilities never merged with any Fletcher entity, performed the work at issue. The Martins provide no evidence to rebut this assertion. Additionally, FCCNA filed a certificate of dissolution in 2007. Therefore, FCCNA would have no reason to know that it should have been named in the original complaint or that it might be liable to the Martins for any damages.

Even if the Martins meet the first two conditions for relation back, they fail to demonstrate excusable neglect. They compare this case to <u>Perrin v. Stensland</u>,[50] where the plaintiff named the deceased driver rather than the driver's estate because he was unaware of the driver's death. <u>Perrin</u> concerned

_____
[50]158 Wn. App. 185, 189, 194, 240 P.3d 1189 (2010).

a claim of lack of due diligence in amending the complaint after learning the correct party.[51] The plaintiff served the driver's widow, who provided notice to the insurer under the same policy as the driver.[52] The court determined that the estate was not prejudiced because it should have known that the plaintiff would have named the estate but for the mistaken belief that the driver was still alive.[53] No evidence showed that Perrin "made a strategic choice to avoid naming the estate."[54]

The Martins provide no evidence of actions that they took to determine the correct parties before the statute of limitations expired or what information any investigation revealed. As discussed above, the articles of amendment changing the name of WSH to Fletcher General Inc., as well as the articles of merger of Fletcher General Inc. into FCCNA, were public records available at the time that the Martins filed their original pleading. FCCNA also points to a newspaper article and a page on General Construction's web site discussing the corporate history of WSH. And, again, FCCNA dissolved in 2007. Our Supreme Court has found inexcusable neglect when the party seeking to amend did not know the additional party's identity but could have discovered it from public records.[55]

---

[51] Perrin, 158 Wn. App. at 188.
[52] Perrin, 158 Wn. App. at 188-89.
[53] Perrin, 158 Wn. App. at 202.
[54] Perrin, 158 Wn. App. at 202.
[55] See Haberman v. Wash. Pub. Power Supply Sys., 109 Wn.2d 107, 174-75, 744 P.2d 1032, 750 P.2d 254 (1987) (no excuse where omitted parties'

Even if, as the Martins allege, there were a "series of complex and non-public mergers and acquisitions over an extended period of time," General Construction filed its answer and third party complaint in October 2007, asserting claims against third party defendants Fletcher General and Fletcher Pacific as the correct successors in interest. General Construction's third party claims should have provided notice to the Martins of potential liability as to at least the Fletcher entities that General Construction named. Instead, the Martins did not file their first amended complaint until January 2010. Because the Martins do not offer a persuasive reason for this delay, they fail to demonstrate excusable neglect. Thus, the amendment does not relate back to the original pleading, and the statute of limitations bars the Martins' claims against FCCNA.

General Construction's Cross Appeals

General Construction raises three issues in its cross appeal. First, it claims that the trial court erred in denying its first motion for summary judgment contending that the Martins' claims constituted an "excluded liability" under the 1996 stock purchase agreement. Second, it asserts that the trial court erred in denying its motion for summary judgment arguing that the statute of repose barred the Martins' claims. Third, it challenges the trial court's denial of its

identity available from a variety of public sources); Tellinghuisen v. King County Council, 103 Wn.2d 221, 224, 691 P.2d 575 (1984) (no excuse where omitted parties' identity was matter of public record); S. Hollywood Hills Citizens Ass'n v. King County, 101 Wn.2d 68, 77-78, 677 P.2d 114 (1984) (same).

motion for summary judgment contending that WSH was not liable under Washington's product liability act, chapter 7.72 RCW.

A party can appeal only a final judgment.[56] The denial of a summary judgment "has no preclusive effect on further proceedings. . . . It does not end proceedings, but rather permits them to proceed. The denial of a summary judgment motion is not a final order that can be appealed."[57] Therefore, we decline to address the issues that General Construction raises in its cross appeal.

## CONCLUSION

Because the Martins fail to show that General Construction assumed liability for their claims and fail to show that the trial court erred in its application of the statute of limitations, we affirm.

*Leach C.J.*

WE CONCUR:

---

[56] RAP 2.2(a).
[57] In re Estate of Jones, 170 Wn. App. 594, 605, 287 P.3d 610 (2012) (citing Zimny v. Lovric, 59 Wn. App. 737, 739, 801 P.2d 259 (1990); Roth v. Bell, 24 Wn. App. 92, 104, 600 P.2d 602 (1979)).